## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

RIGGS DISTLER & COMPANY, INC.,:
               Plaintiff,  :

      v.                  :

VALERO REFINING COMPANY –  :
NEW JERSEY and HOWE-BAKER   :      NO. 03-CV-5854
ENGINEERS, LTD.,           :
           Defendants and  :
      Third Party Plaintiffs,  :
                     :

      v.                  :

C.H. SCHWERTNER & SON, INC.,  :
ET AL,                       :
        Third Party Defendants.  :

## EXHIBITS OF LIEN CLAIMANTS
## IN SUPPORT OF THEIR
## JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT
## ON THE CALCULATION OF THE LIEN FUND

JACOBY DONNER, P.C.
Attorneys for C.H. Schwertner
& Son, Inc.

FLAMM, BOROFF & BACINE, PC
Attorneys for Riggs Distler &
Company, Inc.

DAVIS, BUCCO & ARDIZZI, PC
Attorneys for Merrell & Garaguso, Inc.

LAW OFFICES OF STEVEN A. BERKOWITZ
Attorneys for Brennan Industrial
Contractors, Inc.

CLANCY, CALLAHAN & SMITH
Attorneys for S.M. Electric Company, Inc.
and
Schoonover Electric Company, Inc.

PEPPER HAMILTON, LLP
Attorneys for I&S, Inc. and Mid-Atlantic
Constructors, Inc.

# EXHIBIT 1

# HOWE-BAKER ENGINEERS, LTD.

## AND

## VALERO REFINING COMPANY – NEW JERSEY

## E.P.C. AGREEMENT

## FOR

## CCR PLATFORMER

## PAULSBORO, NEW JERSEY

**Howe-Baker**
**Engineers, Ltd.**

J-1901

LC-3

VAL 002882

TABLE OF CONTENTS

VAL 002883

# TABLE OF CONTENTS

| I. | EPC AGREEMENT | |
|------|------|------|
| II. | EXHIBIT A | PROJECT SCHEDULE |
| III. | EXHIBIT B-1 | SUBCONTRACTOR AFFIDAVIT |
| IV. | EXHIBIT B-2 | SUBCONTRACTOR FINAL AFFIDAVIT |
| V. | EXHIBIT B-3 | CONTRACTOR PARTIAL AFFIDAVIT |
| VI. | EXHIBIT B-4 | CONTRACTOR FINAL AFFIDAVIT |
| VII. | EXHIBIT B-5 | SECURITY AGREEMENT |
| VIII. | EXHIBIT C | MILESTONE PAYMENT SCHEDULE |
| IX. | EXHIBIT D | REFINERY RULES |
| X. | EXHIBIT E | SAFETY |
| XI. | EXHIBIT F | DRUG PROGRAM |
| XII. | EXHIBIT G | EQUAL EMPLOYMENT OPPORTUNITY |
| XIII. | EXHIBIT H | BLANK |
| XIV. | EXHIBIT I | BLANK |
| XV. | EXHIBIT J | BLANK |
| XVI. | EXHIBIT K | ROCIP |
| XVII. | EXHIBIT L | TEST PROCEDURE |

VAL 002884

EPC AGREEMENT

VAL 002885

Contract No. _____

# ENGINEERING, PROCUREMENT &
## CONSTRUCTION AGREEMENT
### BETWEEN
## VALERO REFINING COMPANY - NEW JERSEY
### –AND
## HOWE-BAKER ENGINEERS, LTD.

Paulsboro EPC (Final)
Page 1

VAL 002886

Contract No. _____

# ENGINEERING, PROCUREMENT & CONSTRUCTION AGREEMENT

This Engineering, Procurement and Construction Agreement (the "Agreement"), made and entered into this 26th day of November, 2002 (the "Effective Date") by and among Valero Refining Company-New Jersey . (hereinafter referred to as "Valero"), and Howe-Baker Engineers, Ltd.(hereinafter referred to as "Contractor");

## WITNESSETH:

That Valero and Contractor, for the consideration set forth below and subject to all of the following terms and conditions, hereby agree as follows:

1. Composition of Agreement. Contractor will perform diligently, carefully and in a good, substantial and workmanlike manner, all Work as defined in Paragraph 3 called for in this Agreement. This Agreement shall include Certificate of Insurance; the Technical Scope Document attached hereto as Attachment 1 (the "TSD"); Drawings; Plans; Specifications and all Exhibits attached hereto and by this reference are all incorporated and made a part hereof for all intents and purposes. In the event of a conflict between Drawings and Specifications, the Drawings shall prevail. All Drawings, Plans and Specifications remain the property of Valero and shall be returned upon completion of the Work; provided however, Contractor may retain copies of such Drawings, Plans and Specifications for its records.

2. Term. A.   Project Schedule. Attached hereto as Exhibit A is the Project Schedule. Contractor shall administer and perform the Work substantially in accordance with the Project Schedule and guarantees that the Mechanical Completion (as defined in the TSD) of the Project shall occur on or before Project Date Certain (as defined below), subject to the application of Delay Liquidated Damages per Section 2 E below if Mechanical Completion of the Project occurs after the Project Date Certain, and subject to Articles 5, 25 and 37 hereunder. Project Date Certain means the date by which Contractor is obligated to reach Mechanical Completion as shown in the Project Schedule. As of the date of this Agreement, the Project Date Certain is January 31, 2004. The Project Schedule and the Project Date Certain shall not be adjusted except as provided in Section 2E. Time is of the essence in the performance of this Agreement with respect to the Project Date Certain.

B. Notice to Proceed.  Contractor will commence with the Work upon execution of this Agreement and shall thereafter proceed continuously and diligently to perform the Work.

C. Previous Work. All work performed pursuant to that certain Letter of Intent between Valero and Howe-Baker Engineers, Ltd., dated April 5, 2002 and that certain Interim Work Agreement between Valero and Howe-Baker Engineers, Ltd. dated July 11, 2002, shall be governed by and subject to the terms of this Agreement as if such work had been performed

Paulsboro EPC (Final)
Page 2

pursuant to this Agreement.

D. **Early Completion Bonus.** If Contractor achieves Mechanical Completion of the Project more than twenty eight (28) Days prior to the Project Date Certain (such twenty eight day period is referred to as the "Bonus Interim Period"), then Valero shall pay Contractor an early completion bonus equal to: (i) fifty thousand dollars ($50,000) for each Day that Mechanical Completion of the Project is achieved prior to the Bonus Interim Period, for a period not to exceed four Days; (ii) one hundred thousand dollars ($100,000) for each Day that the Mechanical Completion of the Project prior to the Bonus Interim Period and the period referred to in (i) above, for a period not to exceed four Days; and (iii) one hundred and fifty thousand dollars ($150,000) for each Day that the Mechanical Completion of the Project occurs prior to the Bonus Interim Period and the periods referred to in (i) and (ii) above,(the total of all such amounts earned by Contractor being the *"Early Completion Bonus"*). Valero will pay the Early Completion Bonus upon payment of the final invoice due hereunder. In no event shall the Early Completion Bonus exceed one million five hundred thousand dollars ($1,500,000). As used herein, "Day" shall mean a complete twenty four hour period commencing at 12:00 am and ending at 11:59 pm.

E. **Delay Liquidated Damages.** If Mechanical Completion of the Project occurs more than twenty eight (28) Days after the Project Date Certain (such twenty eight day period is referred to as the "Delay Interim Period"), Contractor shall pay Valero the sum of: (i) fifty thousand dollars ($50,000) for each Day that the Mechanical Completion of the Project occurs after the Delay Interim Period, for a period not to exceed four Days; and (ii) one hundred thousand dollars ($100,000) for each Day that the Mechanical Completion of the Project occurs after the Delay Interim Period and the period referred to (i) above, for a period not to exceed four Days; and (iii) one hundred and fifty thousand dollars ($150,000) for each Day that the Mechanical Completion of the Project occurs after the Delay Interim Period and the periods referred to in (i) and (ii) above; (the total of all such amounts payable by Contractor being the *"Delay Liquidated Damages"*). Contractor shall pay such Delay Liquidated Damages within thirty (30) days of receipt of Valero's invoice therefor. Valero may offset any such amounts in whole or in part against any security or any amounts due to Contractor under this Agreement. THE CUMULATIVE AGGREGATE AMOUNT OF DELAY LIQUIDATED DAMAGES FOR WHICH CONTRACTOR SHALL BE LIABLE UNDER THIS AGREEMENT SHALL NOT EXCEED ONE MILLION FIVE HUNDRED THOUSAND DOLLARS ($1,500,000). To the extent an event of Force Majeure, a Change Order or a failure of Valero to perform timely its obligations hereunder causes an actual delay in the performance of Critical Path Items (as defined below) related to the Work, the Project Schedule and the Project Date Certain shall be extended for each 24 hour period of actual delay caused thereby. Critical Path Items are those items in the Project Schedule with zero float as defined by the Primavera schedule software program or which as a result of the delay have zero float. DELAY LIQUIDATED DAMAGES SHALL BE VALERO'S SOLE AND EXCLUSIVE REMEDY FOR CONTRACTOR'S UNEXCUSED FAILURE TO ACHIEVE MECHANICAL COMPLETION ON OR BEFORE THE PROJECT DATE CERTAIN.

Paulsboro EPC (Final)
Page 3

3. <u>Scope of Work.</u> The term "Work" as used herein shall mean all labor, material, supplies, equipment and services necessary to engineer, design and construct the facility shown and described in the TSD. Contractor agrees to perform the Work and shall furnish all labor, material, supplies, equipment and services necessary to complete the Work.

4. <u>Services Provided.</u> Contractor agrees to have available at all times while engaged in the performance of the Work, to furnish at its expense, and to be solely responsible for all labor, competent supervision, insurance, machinery, equipment, materials and supplies, tools (whether rented or owned), equipment, light, fuel, power, heat, transportation, and all other facilities necessary or desirable for the completion of the Work as described in the applicable TSD except for the items, if any, to be furnished by Valero, which items shall be specified in the applicable TSD. Following are broad descriptions of the type of Work that Contractor may be requested to furnish. This listing is not intended to be all inclusive, but to show examples:

   (a) Perform conceptual design and other consulting engineering studies.
   (b) Perform detailed plant engineering studies.
   (c) Prepare specifications for engineered equipment, instrumentation and electrical items, engineered items being defined as items having an item number on engineering flow diagrams.
   (d) Prepare process flow diagrams (PFD'S) and piping and instrumentation diagrams (P&Ids).
   (e) Prepare detailed designs to enable the Work to be performed.
   (f) Prepare purchase requisitions, bid summaries and/or issue purchase orders for engineered equipment items and bulk materials.
   (g) Issue subcontracts for services to be performed by others.
   (h) Provide construction labor, supervision, materials, equipment, tools, and supplies necessary to construct the facilities (hereinafter called "Facilities").
   (i) Perform such other design, engineering, procurement, construction or related services as Valero may request.

5. <u>Changes to Scope of Work.</u>

   (a)   Valero, without invalidating this Agreement, may order changes in, additions to and deletions from the Work from time to time, with all such changes to be ordered in writing. If such changes involve extra cost to Contractor or will adversely affect the Work or Contractor's ability to complete the Work prior to the Project Date Certain, Contractor shall so advise Valero in writing prior to commencing performance of such change. Contractor's notice to Valero shall be in writing, be provided within seven (7) days following Valero's request for such change, and include such detail as Valero may reasonably request as to the effect of the requested change on the TSD Price (as defined below), the Project Schedule (including the Project Date Certain) and the Work. If such notice is not so given, it shall be deemed that no change of the TSD Price, the Project Schedule (including the Project Date Certain) or the Work is required by reason of such change. Contractor's cost of preparing the detailed definition and cost estimate for any change requested by Valero shall be determined by Contractor and paid by Valero if the change is not accepted by Valero. If requested

Paulsboro EPC (Final)
Page 4

by Valero, Contractor shall furnish a preliminary estimate of Contractor's cost of preparing the aforementioned detailed definition and estimate for a change prior to initiating such preparation. Notwithstanding the above, there shall be no cost to Valero for estimating changes that are accepted by Valero, and Contractor, at Contractor's sole option, may provide estimates of the cost of various design options to Valero at no charge to Valero.

(b)     If the notice contemplated by Section 5(a) is given by Contractor, Valero and Contractor shall endeavor in good faith to agree upon an adjustment to the TSD Price, the Project Schedule (including the Project Date Certain), and any other terms of this Agreement and/or the TSD affected by such change. .

In the absence of such agreement or in the event that Valero wishes to institute such change immediately without knowledge of the effect on the Project Schedule (including the Project Date Certain), TSD Price or Work resulting therefrom, extra work sheets detailing the costs actually incurred shall be prepared weekly by Contractor and approved by Owner, and upon conclusion of the Work associated with the Change Order, the TSD Price shall be adjusted by the actual cumulative out of pocket costs incurred by Contractor in performance of the Change Order, plus ten percent (10 %) as an allowance for Contractor's profit.. Upon conclusion of the Work associated with such a Change Order, Valero and Contractor shall mutually agree to the effect, if any, of the Change Order on the Project Schedule (including the Project Date Certain). All charges and expenses incurred pursuant to this Section 5(b) shall be subject to audit as provided in Section 29.

(c)     All changes to the TSD Price, the Project Schedule (including the Project Date Certain), and/or the scope of the Work shall only be effective if made pursuant to a written change order (each, a "Change Order") executed by an authorized representative of Valero and an authorized representative of Contractor. Contractor's execution of each Change Order shall not be unreasonably withheld or delayed.

(d)     Contractor shall not comply with oral changes in the Work. If Contractor believes that any oral notice or instruction received from Valero will involve a change in the cost, time to perform or integrity of the Work, it shall require that the notice or instruction be given in writing and shall comply with the provisions of Section 5 (a). Any costs incurred by Contractor to perform oral changes shall be for Contractor's account. If Contractor believes that any oral notice or instruction received from Valero will involve a change in the cost, time to perform or integrity of the Work, it shall require that the notice or instruction be given in writing and shall comply with the provisions of Section 5 (a).

6.     Compensation. Upon execution of this Agreement, Contractor shall perform the Work at times and places as are set forth in the TSD. The fee for such Work shall be $110,145,980 (the "TSD Price").

Paulsboro EPC (Final)
Page 5

7.   <u>Terms of Payment</u>.

(a)   Contractor shall submit to Valero on or about the tenth day of each month an application for progress payment pursuant to the Milestone Payment Schedule attached hereto as Exhibit C. Subject to Valero's verification that the appropriate Milestone has been achieved, Valero shall pay to Contractor ninety percent (90%) of all amounts included in any such application for progress payment within thirty (30) days after the receipt of any such application for progress payment by Valero. The balance of all applications for progress payment will be retained until final payment per paragraphs 8(a)-(c).

(b)   Contractor shall provide to Valero, (i) conditional releases and waivers upon progress payment substantially in the form attached as Exhibit B-1 issued by all parties retained by Contractor in connection with the Work who have rendered services, performed work or furnished materials, the costs of which are included in any application for payment, under this Agreement and is in excess of Five Thousand Dollars ($5,000.00) indicating any amounts, including applicable retainage, that are due or owing to such parties for materials, labor and/or other work, the costs of which have been included in any application for payment submitted and not paid by Contractor; (ii) unconditional releases and waivers upon progress payment substantially in the form attached as Exhibit B-2 issued by all parties retained by Contractor in connection with the Work who have rendered services, performed work or furnished materials, the cost of which is included in any application for payment, under this Agreement and is in excess of Five Thousand Dollars ($5,000.00), evidencing that such parties have been paid all amounts, less any applicable retainage, attributable to materials, labor and/or other work, the costs of which have been included in any application for payment submitted and paid by Valero; (iii) an executed document substantially in the form of Exhibit B-5 granting Valero a security interest in the Work; and (iv) a conditional release and lien waiver upon progress payment substantially in the form attached hereto as Exhibit B-3 issued by Contractor.

(c)   All applications for Milestone Payments under this Agreement shall be subject to sole verification by Valero that the Milestone has been achieved. Valero shall not be entitled to withhold any approval of any application for payment under this Agreement if such application for payment is in accordance with the terms of this Agreement and payment of the amount shown in such application for payment is due to Contractor pursuant to the terms and provisions of this Agreement.

(d)   Notwithstanding paragraph (c) above, Valero may withhold any progress payment to be made to Contractor in whole or in part and/or may, because of subsequently discovered evidence or subsequent inspection, nullify all or any part of any progress payment previously made to Contractor to the extent reasonably necessary to protect Valero from loss because of:

Paulsboro EPC (Final)
Page 6

(i)    defective work and/or work not performed by Contractor in accordance with the TSD, provided that Contractor has been given written notice by Valero of such defective and/or nonconforming work and has failed to remedy such defective and/or nonconforming work promptly after being given written notice by Valero of such defective and/or nonconforming work;

(ii)    claims filed or reasonable evidence indicating the probable filing of such claims by third parties as a result of any act or omission of Contractor for which Contractor fails or refuses to defend and/or indemnify Valero as required hereunder;

(iii)    failure of Contractor to make payments properly to subcontractors, laborers and/or materialmen retained by Contractor; or

(iv)    Contractor's failure to accurately report the progress of the Project Milestones.

Contractor shall be notified promptly in writing of any and all grounds for the withholding and/or nullifying of any such progress payment. Valero further acknowledges and agrees that it shall promptly pay Contractor all or such part of such progress payment so withheld because of such grounds when the grounds for such withholding are removed and there are no further grounds for withholding.

Notwithstanding the foregoing, if Contractor fails to make any payment to a subcontractor, laborer and/or materialman retained by Contractor, Valero shall not be entitled to withhold any progress payment if and to the extent Contractor furnishes Valero with a surety bond issued by an underwriter or surety acceptable to Valero to protect Valero from loss and Contractor furnishes Valero with a signed agreement in a form acceptable to Valero whereby Contractor agrees to indemnify and hold Valero harmless from any and all claims arising out of Contractor's failure to provide Valero with such releases and/or waivers of lien.

(e)    If Valero should in good faith dispute any amount included in any application for progress payment submitted by Contractor, Valero shall within thirty (30) days after receipt of such application for payment, notify Contractor in writing of the general nature of such dispute and pay in accordance with this Agreement any amount included in such application for payment and not so disputed. No amounts included in any such application for payment shall be considered to be disputed in good faith by Valero unless Valero has notified Contractor of such dispute as set forth above and has paid in accordance with the terms of this Agreement all amounts included in any such application for payment that Valero does not dispute.

(f)    Contractor shall continue to proceed with the Work and shall maintain the progress of the Work in the event that Valero shall dispute any amount included in an individual Milestone Payment provided that the dispute is a good faith dispute and

Valero shall, notwithstanding such dispute, continue to perform, in accordance with the terms of this Agreement, all obligations of Valero not disputed.

(g)     Notwithstanding anything to the contrary set forth herein, Contractor shall not be required as a condition precedent to the obligation of Valero to make any payment, including any portion of the final payment, to provide to Valero any releases and/or waivers of lien issued by any party retained by, through or under Contractor in connection with the Work if (i) Contractor furnishes Valero with documentation clearly evidencing that Contractor has no payment obligations to such party relating to the Work; and (ii) at Valero's option(a) Contractor furnishes Valero with a surety bond issued by an underwriter or surety acceptable to Valero in proper statutory form and amount reasonably satisfactory to protect Valero from loss because of the recording or filing, or potential recording or filing, by such party of any mechanic's lien in respect to the Work; or, (b) Contractor furnishes Valero with a signed agreement in a form acceptable to Valero whereby Contractor agrees to indemnify and hold Valero harmless from any and all claims arising out of Contractor's failure to provide Valero with such releases and/or waivers of lien.

8.     Final Payments.

(a)     Payment of Milestone #19 Upon Mechanical Completion. Contractor shall submit to Valero an application for payment of Milestone # 19 immediately after Mechanical Completion of the Work. Payment of such Milestone is due and payable by Valero within thirty (30) days after acceptance by Valero of the Mechanical Completion Certificate.

(b)     Final Payment. Valero's obligation to pay the final invoice and retainage is conditioned upon the following:

(i) Contractor shall make available to Valero at Contractor's principal place of business satisfactory evidence reasonably requested by Valero, reflecting the proper payment by Contractor of all indebtedness incurred for materials, labor and other work, the cost of which has been included in any application for payment submitted and paid by Valero.

(ii) Subject of Section 7 (g) hereof, Contractor shall provide to Valero, unconditional releases and waivers of lien issued by all parties retained by Contractor in connection with the Work who have rendered services, performed work or furnished materials, the cost of which is included in any application for payment under this Agreement showing that such parties have been paid all amounts, less any applicable retainage, attributable to materials, labor or other work, the cost of which has been included in any application for payment submitted and paid by Valero,

VAL 002893

(iii) Contractor shall provide a waiver of liens issued by Contractor in a form and substance substantially identical to the final waiver of liens attached as Exhibit B-4.

(iv) Contractor's completion and Valero's acceptance of all punchlist items listed in the Mechanical Completion Certificate.

(c)   If Valero shall in good faith dispute any amount included in the final application for payment submitted by Contractor, Valero shall notify Contractor in writing within thirty (30) days after receipt of such final application for payment of the general nature of such dispute and pay in accordance with this Agreement any amount included in the final application for payment and not so disputed. No amounts included in the final application for payment shall be considered to be disputed in good faith by Valero unless Valero has so notified Contractor of such dispute as set forth above and has paid in accordance with this Agreement all amounts included in the final application for payment and not disputed.

(d)   All payments due Contractor under this Agreement shall be made to Contractor by wire transfer to Contractor's account on or before the date due. Interest shall accrue on late payments at the prime rate as quoted in the Money Rates section of the Wall Street Journal, plus 2%. Any payments that are improperly disputed by Valero but subsequently paid to Contractor shall bear interest at the same rate as set forth in the preceding sentence from the date of the dispute until the date paid.

9.   Insurance.

It is intended by the parties that Valero shall provide insurance under the ROCIP program as set forth in Exhibit K. Notwithstanding the existence of the ROCIP, Contractor shall maintain at all times during the term of this Agreement, with an insurance company acceptable to Valero, the insurance coverages set forth in A through D below for Work not covered by the ROCIP, and as set forth in E below for all Work, with limits not less than those specified below. Should Valero cancel the ROCIP, Contractor shall maintain at all times following such cancellation, with an insurance company acceptable to Valero the insurance coverages set for the in A through D below with limits not less than those specified below and Valero shall reimburse Contractor for its actual costs in maintaining such insurance.

A.   1. Worker's Compensation        Statutory: Coverage satisfactory in New Jersey.

2.   Employer's Liability        $100,000 each accident

B.   General Liability Coverage:        $500,000 Combined Single Limit Bodily Injury
endorsed to cover (i) contractual        and Property Damage Combined
liability assumed under this
Contract; and (ii) products

Paulsboro EPC (Final)
Page 9

liability, and completed
operations

| | | |
|---|---|---|
| C. | Automobile Liability Coverage: endorsed to cover all owned, non-owned and hired vehicles | $500,000 Combined Single Limit Bodily Injury and Property Damage Combined |
| D. | Umbrella Liability in excess of A.2., B & C. Endorsed to provide a drop-down endorsement in the event underlying limits are exhausted by claims. | $20,000,000 Combined Single Limit Bodily Injury and Property Damage Combined and in the aggregate |
| E. | Errors and Omissions Coverage | $5,000,000 |

Prior to commencing any Work, Contractor shall furnish Valero with a Certificate of Insurance evidencing that the above minimum coverages are in effect, and replacement certificates shall be furnished for all renewals of such insurance. All policies except A. 1 above shall be endorsed to name Valero Energy Corporation, its subsidiaries and affiliates, and their directors, officers and employees (hereinafter sometimes referred to as "Additional Insureds") as Additional Insureds (to the extent that the loss or claim is related to the Work and due to an act or omission of Contractor, its employees, subcontractors, agents or representatives). All policies above shall provide a waiver of subrogation clause in favor of the Additional Insureds, and the certificate shall state that all coverages provided by the Contractor shall be primary to any insurance carried by Valero for its own account. Such insurance shall be endorsed with a standard cross liability clause in favor of the Additional Insureds. Such insurance shall also cover the actions of any subcontractor that Contractor may utilize under this Agreement. Further, underwriters of such insurance will provide Valero thirty (30) days written notice of cancellation or adverse material change, including but not limited to a reduction in limits available to the Additional Insureds, in Contractor's insurance. Any such notice of cancellation shall not be effective for thirty (30) days after receipt by Valero. In the event Contractor fails to procure or maintain in force the insurance specified herein, Valero may secure such insurance and the cost thereof shall be borne by Contractor.

The Parties understand and agree that the purpose of this section is for Contractor to provide Valero with insurance coverage as an Additional Insured which will be primary to any insurance policy Valero might carry on its on behalf and that such coverage which Contractor supplies will respond to losses arising out of any act, omission, failure to act or negligence on the part of any Additional Insured to the extent that the loss or claim is related to the Work and due to an act or omission of Contractor, its employees, subcontractors, agents or representatives. It is also understood and agreed that this

insurance coverage provided by Contractor shall operate independent and apart from any obligations imposed on Contractor under the Indemnity provisions in Paragraph 13 of this Agreement.

10.   This Section 10 is intentionally left blank.

11.   Valero's Liability Insurance.  Valero shall be responsible for maintaining its own liability insurance and, at its option, may self insure or it may purchase and maintain such insurance as will protect it against claims, which may arise from operations under this Contract.

12.   Duty to Defend.  Contractor shall take necessary safety and other precautions to protect property and persons from damages, injuries, or illness arising out of the performance of the Work.  At all times while any of Contractor's employees, agents, or subcontractors are inside the battery limits as shown on the TSD ("ISBL"), Contractor shall be solely responsible for providing them with a safe place of employment, and Contractor shall inspect the places where its employee, agents, or subcontractors are or may be present ISBL and shall promptly take action to correct conditions which are or may become an unsafe place of employment for them.  In the event an incident arises under this Agreement wherein Valero is sued and Contractor is obligated to provide Valero a defense either under Paragraph 9 or 13 of this Agreement, Contractor shall provide or cause to be provided competent counsel for said defense within two weeks of Valero's notice to Contractor of such action.  In the event Contractor fails to provide such counsel within this time period, then Valero may appoint its own outside counsel which shall be for Contractor's account until Contractor substitutes its own choice of counsel.

13.  INDEMNITY

(A) CONTRACTOR AGREES TO INDEMNIFY AND SAVE HARMLESS VALERO, ITS PRESENT AND FUTURE OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS, ITS PARENTS, AFFILIATES AND SUBSIDIARIES (COLLECTIVELY THE "VALERO PARTIES"), FROM AND AGAINST THAT PORTION OF ANY AND ALL LIABILITIES, PENALTIES, FINES, FORFEITURES, DEMANDS, CLAIMS, CAUSES OF ACTION, SUITS, AND DIRECT COSTS AND EXPENSES INCIDENTAL THERETO (INCLUDING COST OF DEFENSE, SETTLEMENT, AND REASONABLE ATTORNEY'S FEES) (COLLECTIVELY, "CLAIMS"), WHICH ANY AND ALL OF THEM MAY HEREAFTER SUFFER, INCUR, BE RESPONSIBLE FOR OR PAY OUT AS A RESULT OF BODILY INJURIES (INCLUDING DEATH) TO ANY PERSON, DAMAGE TO ANY PROPERTY, CONTAMINATION OF OR ADVERSE EFFECTS ON THE ENVIRONMENT, OR ANY VIOLATION OR ALLEGED VIOLATION OF STATUTES, ORDINANCES, ORDERS, RULES OR REGULATIONS OF ANY GOVERNMENTAL ENTITY OR AGENT, AND WHICH IS DIRECTLY OR INDIRECTLY, AND TO THE EXTENT THAT IT IS CAUSED BY OR ARISES OUT OF ANY BREACH OF ANY WARRANTIES BY CONTRACTOR, OR ANY NEGLIGENT OR WILLFUL ACT OR OMISSION OF CONTRACTOR, ITS EMPLOYEES OR SUBCONTRACTORS

IN THE PERFORMANCE OF THIS AGREEMENT.

(B) NOTWITHSTANDING ANYTHING IN SUB-SECTION (A) ABOVE TO THE CONTRARY, IN THE EVENT A CLAIM ARISES FROM OR IS CAUSED BY, BREACH BY CONTRACTOR, ITS EMPLOYEES OR SUBCONTRACTORS OF ANY LAW, REGULATION, ORDINANCE, OR RULE OF ANY GOVERNMENTAL AUTHORITY HAVING PROPER JURISDICTION OR FROM A VIOLATION OF VALERO'S SAFETY GUIDELINES, THEN, TO THE FULLEST EXTENT PERMITTED BY LAW AND REGARDLESS OF ANY DEGREE OF FAULT, OMISSION OR NEGLIGENCE, STRICT LIABILITY, STRICT PRODUCTS LIABILITY, OR NEGLIGENCE PER SE, OF THE VALERO PARTIES, CONTRACTOR AGREES TO INDEMNIFY AND SAVE HARMLESS THE VALERO PARTIES, FROM AND AGAINST ANY AND ALL CLAIMS UNLESS IT IS DETERMINED BY JUDICIAL PROCEEDING THAT THE INJURY, DEATH DAMAGE, CONTAMINATION, OR VIOLATION COMPLAINED OF WAS ATTRIBUTABLE SOLELY TO THE NEGLIGENCE OR FAULT OF AN INDEMNIFIED PARTY, AND IS NOT IN ANY MANNER, OR IN ANY PART ATTRIBUTABLE TO CONTRACTOR, ITS SUBCONTRACTORS, OFFICERS, AGENTS, EMPLOYEES, SERVANTS AND SUPPLIERS OR ANY OTHER THIRD PARTIES. THE PARTIES RECOGNIZE AND UNDERSTAND THAT THE PURPOSE OF THIS SECTION IS FOR CONTRACTOR TO PROVIDE FULL AND COMPLETE INDEMNIFICATION TO THE VALERO PARTIES EVEN THOUGH THE INDEMNIFIED PARTY MAY HAVE BEEN NEGLIGENT, NEGLIGENT PER SE, OR MAY BE LIABLE UNDER THEORIES OF STRICT LIABILITY AND/OR STRICT PRODUCTS LIABILITY, UNLESS SUCH NEGLIGENCE OR STRICT LIABILITY WAS THE SOLE CAUSE OF THE INJURY OR DAMAGE TO THE EXCLUSION OF ANY OTHER CAUSE. THE OBLIGATION FOR INDEMNITY PROVIDED FOR UNDER THIS SECTION IS INDEPENDENT OF ANY PROTECTION PROVIDED VALERO UNDER ARTICLE 5 OF THIS AGREEMENT. CONTRACTOR'S INDEMNITY OBLIGATION UNDER THIS PROVISION SHALL NOT EXCEED THE AMOUNT RECOVERABLE UNDER THE INSURANCE DESCRIBED IN ARTICLE 5 OF THIS AGREEMENT, OR AMOUNTS THAT WOULD HAVE BEEN RECOVERABLE UNDER SUCH INSURANCE (I) BUT FOR PROVISIONS, EXCLUSIONS OR RIDERS DENYING OR LIMITING COVERAGE THAT ARE INVOKED, TRIGGERED OR RELIED UPON BY THE INSURER DUE TO ANY NEGLIGENCE, GROSS NEGLIGENCE, CONDUCT CONSTITUTING MALICE, WILLFUL MISCONDUCT, INTENTIONAL, ILLEGAL OR FRAUDULANT CONDUCT, ACT OR OMISSION OF CONTRACTOR (OTHER THAN INTENTIONAL CONDUCT THAT IS REQUIRED BY THE SCOPE OF WORK); OR (II) IF CONTRACTOR FAILS TO PROVIDE AND MAINTAIN INSURANCES IN ACCORDANCE WITH ARTICLE 5 OF THIS AGREEMENT; PROVIDED, HOWEVER, CONTRACTOR'S AGGREGATE LIABILITY UNDER THIS SUB-SECTION 13(B) SHALL BE LIMITED TO $5,000,000, AND THE AMOUNT OF ANY LOSS OR LIABILITY ABOVE SUCH LIMITS SHALL BE ALLOCATED IN ACCORDANCE WITH SUB-SECTION 13(A) ABOVE.

(C) THE OBLIGATIONS OF THE PARTIES DESCRIBED ABOVE SHALL NOT BE LIMITED IN ANY WAY BY ANY LIMITATION ON THE TYPE OF DAMAGES, COMPENSATION OR BENEFITS PAYABLE UNDER WORKER'S OR WORKMEN'S COMPENSATION ACTS, DISABILITY BENEFITS, OTHER EMPLOYEE BENEFIT ACTS OR MINIMUM INSURANCE LIMITS SET FORTH IN THIS AGREEMENT.

No statute, rule, or regulation that precludes an injured party from bringing an action against a fellow employee or employer shall preclude the Valero Parties from seeking and obtaining a judicial determination of the fault or negligence of such persons for purposes of this section.

14. Independent Contractor. In the performance of Work under this Agreement, Contractor shall at all times be an independent contractor, and the relationship of the Parties hereunder shall in no event be construed as constituting any other relationship. Neither Contractor nor anyone employed or engaged by it shall be, represent, act, purport to act, or be deemed to be the agent, representative, employee or servant of Valero, nor shall Contractor or anyone employed or engaged by it be treated as an employee of Valero for any purpose, including tax and social security coverage and withholding, or any Valero provided employee benefits. Contractor shall have responsibility for and control over the details and means for performing the Work, provided that Contractor is in compliance with the terms of this Agreement. Anything in this Agreement which may appear to give Valero the right to direct Contractor as to the details of the performance of the Work or to exercise a measure of control over Contractor, shall mean that Contractor shall follow the desires of Valero only as to the intended results of the Work. The Work specified in this Agreement is subject to Valero's inspection and approval, and all refinery specifications, scheduling requirements and safety and security regulations.

15. Representatives. Valero shall designate one of its employees to act as Valero's representative, who shall have limited authority to act for Valero; provided, however, such representative shall not have authority (i) to alter, amend, modify or change the terms of this Agreement; (ii) to bind Valero to any commitments beyond those set forth herein; or (iii) to execute Change Orders. The Valero representative may from time to time through Contractor give advice as to the methods by which the Work is accomplished in order to safeguard the operation of Valero's facilities and insure that the Work conforms to the requirements of the Agreement. Compliance by the Contractor, subcontractor or any employee with the recommendation of Valero's representative shall not release the Contractor from the obligations assumed by the Contractor under this Agreement.

Contractor shall assign to the Work a project representative who shall be responsible for the project supervision and have the authority to act for Contractor. The designated project representative shall not be removed without the mutual consent of the Valero and Contractor, and shall be in attendance at the project site during Contractor's Working hours. Contractor shall advise Valero in writing of the name, address, and telephone number (day and night) of such designated project representative and of any change in such designation

Paulsboro EPC (Final)
Page 13

16.    Quality and Inspection of Work.

16.1    Design and Engineering Services: Contractor warrants that it will perform its design and engineering services in accordance with the standards of care and diligence normally practiced by recognized engineering firms in performing services of a similar nature. Furthermore, Contractor warrants that it has experience and capability including competent management and other personnel to perform the Work in order to satisfy the professional warranty standard as stated above. If during the one (1) year period following Mechanical Completion, it is discovered that those standards have not been met, and Valero has notified Contractor in writing of such failure, Contractor shall perform, at its cost, such corrective home office design and engineering services and field construction or reconstruction as may be necessary, within the original scope of the Work to remedy such deficiency. In addition, Contractor warrants that the new equipment supplied for the Naphtha Hydrotreater and its Stripper will be hydraulically capable of the basis throughput of 28,500 BPSD when tested in accordance with Contractor's instructions as set forth in Exhibit L attached hereto. Contractor's liability for the subject new equipment's failure to achieve said hydraulic condition shall be determined by good faith negotiations between Valero and Contractor but in no event shall exceed the cost to replace the subject equipment.

16.2    Fabricated Equipment and Field Construction: Subject to Section 16.3, Contractor warrants that all equipment, materials and Work, will be (i) of good quality and free from defects in materials and workmanship and all Work shall be performed in a good, safe and workmanlike manner; (ii) in compliance with the specifications set forth in the TSD; and, (iii) delivered free of all liens or claims of any nature for a period of one (1) year from Mechanical Completion or eighteen (18) months from shipment, whichever date is earlier. If, during the warranty period described above, Contractor's warranty has not been met, Contractor, at its sole option, shall repair (subject to procedures approved by Valero in writing) or replace such defective materials or equipment at no cost to Valero, up to the aggregate limit of Contractor's liability described herein; provided, however, in determining Contractor's expenses relative to the aggregate limit of Contractor's liability, any amounts recovered from original equipment manufacturers, subcontractors and/or suppliers that are related to the warranty claim shall not be included in Contractor's expenses. Contractor's warranty shall not extend to Work, which became defective as a result of improper operation or maintenance, corrosion or erosion due to improper operation or maintenance, or operating conditions substantially more severe than those contemplated in the original design. The Work shall at all times be subject to Valero's inspection and approval, but neither Valero's inspection nor failure to inspect shall relieve Contractor of any obligation hereunder. If in Valero's opinion any article, material or Work, except those described in Section 16.3, fails to conform to specifications or is otherwise defective or unsatisfactory as a result of failure on the part of Contractor or Contractor's subcontractors or personnel during performance of the Work to act and proceed in accordance with normal industry practices and procedures for similar jobs or projects, such repair or replacement shall be at Contractor's expense. THE ACCEPTANCE OR PAYMENT BY VALERO SHALL NOT CONSTITUTE A WAIVER OF THE FOREGOING.

VAL 002899

16.3   Third-Party Materials and Equipment:   If Contractor supplies any specially designed or fabricated materials or equipment hereunder which are purchased on Valero's behalf from third-parties to this Agreement, Contractor shall secure or cause its subcontractors to secure, for the benefit of Valero, guarantees from such third-party vendors, subcontractors and/or suppliers with respect to the materials and equipment manufactured or furnished by them. Such third-party guarantees shall be equivalent to those described in Section 16.2 above for equipment to be supplied by Contractor, provided however, that if an equivalent, or better, guarantee cannot be negotiated with the third-party vendor, Contractor shall so notify Valero, and Valero shall have the option to either: (i) accept the guarantee as negotiated by Contractor, or (ii) require Contractor to attempt to secure a guarantee effective for a period of time acceptable to Valero by paying an additional amount to the third-party vendor, such amount to be an addition to the Contract Price. Contractor will use its best efforts short of litigation to enforce such guarantees or provide the benefits of the same to Valero, including, if requested by Valero, acting as Valero's agent in the enforcement of such guarantees. Contractor, shall, at its cost, supervise any repairs pursuant to the guarantees referred to in this Section.

16.4   LIMITATIONS:   ALL WARRANTIES OF ANY NATURE MADE BY CONTRACTOR IN CONNECTION WITH THE WORK ARE LIMITED TO THOSE SET FORTH IN THIS ARTICLE 16. CONTRACTOR DISCLAIMS ALL STATUTORY, ORAL, OR IMPLIED WARRANTIES, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, AND WARRANTIES ARISING FROM COURSE OF DEALING OR TRADE USAGE.

16.5   EXCLUSIVE REMEDIES.   THE REMEDIES FOR BREACH OF WARRANTY PROVIDED UNDER THIS ARTICLE 16 ARE EXCLUSIVE AND ARE IN LIEU OF ALL OTHER REMEDIES FOR BREACH OF WARRANTY WHICH MAY BE OR BECOME AVAILABLE TO EITHER PARTY TO THIS AGREEMENT AT LAW OR IN EQUITY.

17.   Responsibility for Work.   Notwithstanding anything in this Agreement to the contrary, Valero may, at its sole discretion, elect to insure the Work under a builder's risk policy. Regardless of whether, Valero elects to so insure the Work, prior to written acceptance of the Work by Valero, all risks to the Work that are not normally covered under a typical "Builder's Risk" policy, shall remain the risk of Contractor.   To the extent not covered under a typical "Builder's Risk" policy, Contractor shall be responsible for all loss, deterioration, damage or destruction and shall repair, renew and make good at its own expense, all such loss, damage or destruction however caused except to the extent such loss, damage or destruction is caused by Valero or its subcontractors.

18.   Tools and Equipment.   Contractor shall be solely responsible for tools, equipment and other personal property owned, rented or leased by Contractor or any of its employees which are not to be incorporated in the Work. All tools and equipment will be in a safe and operable condition prior to use in the performance of Work at a Valero facility. Valero reserves the right to inspect or reject any unsafe tools, equipment or conditions.

Paulsboro EPC (Final)
Page 15

Valero from time to time may provide to Contractor certain tools, safety equipment and other equipment owned or rented by Valero (hereinafter called "Tools and Equipment"). Contractor understands and agrees that Valero provides such Tools and Equipment on an "as is and where is " basis. Contractor shall perform any and all tests and checks it deems necessary to ensure the proper and safe functioning and use of the Tools and Equipment for the use intended by Contractor. CONTRACTOR EXPRESSLY ASSUMES ANY AND ALL LIABILITY ARISING FROM OR OUT OF ITS USE OF SUCH TOOLS AND EQUIPMENT AND SHALL FULLY INDEMNIFY AND DEFEND VALERO FROM ANY LOSS OR COST ARISING FROM SUCH USE AS PROVIDED IN PARAGRAPH 13 OF THIS AGREEMENT. All such transfers of use shall be in writing to Contractor's senior job supervisor. Contractor assumes full care, custody and responsibility and agrees to return the Tools and Equipment to Valero in good working order (or if not delivered to Contractor in good working order, then in the condition delivered to Contractor), normal wear and tear excepted. In the event of loss, theft or damage of any Tools and Equipment, Contractor will replace or repair the Tools and Equipment at Contractor's expense, or reimburse Valero for their replacement or repair cost at Valero's option. Title to any Tools or Equipment replaced by Contractor pursuant to the provisions hereof (i.e., the new tools or equipment) shall be transferred to Valero and title to any damaged Tools or Equipment so replaced (i.e., the old tools or equipment) shall be transferred to Contractor.

19.   This Section 19 is intentionally left blank.

20.   Use and Protection of Work and Property. Contractor shall perform all Work in such a manner as to cause minimum interference with the operations of Valero and of other contractors on the premises, and shall take, and cause Contractor's and its subcontractor's employees, agents, and licensees to take reasonably necessary precautions, including those required by Valero's safety and security regulations and with Valero's substance abuse policy, to protect the Work and the premises and all persons and property thereon from damage or injury. Contractor shall employ for Work hereunder workers who possess the necessary qualifications to perform their Work and who are over the age of eighteen. Contractor shall maintain good order among its employees and those of its subcontractors, shall advise and make its employees aware of Valero's safety, security and substance abuse policies, and shall confine its employees to such Work area, roads and gates as directed by Valero. Contractor, its employees or subcontractors shall abide by Valero's Security Regulations attached as Exhibit H. Upon completion of the Work, Contractor shall leave premises clean and free of all equipment, waste materials and rubbish.

Valero has instituted and maintains an ongoing substance abuse control program at its refinery facility which program shall apply to Contractor and its subcontractors. Contractor acknowledges receipt Valero's substance abuse control policy. Contractor agrees that it shall advise its employees and subcontractors that they shall be subject to the provisions of Valero's substance abuse control policy, including drug testing involving hair sampling and/or urinalysis. Valero requires Contractor to implement its own drug control policy for its employees and subcontractors assigned to perform Work at any Valero facility.

Paulsboro EPC (Final)
Page 16

21. <u>Safety and Environment</u>: It is understood and agreed between the Parties that Valero's refinery safety program requires training of all persons engaged in Work on the refinery site in safe Work requirements and safety awareness. Contractor agrees that it shall conduct safety training of its employees consisting of a minimum of the safety requirements included in Valero's pre-contract safety meeting and those specified in Valero's contractor safety requirements attached as Exhibit E which minimum training shall be completed for each employee prior to Contractor's bringing any such employee(s) to Valero's refinery site to engage in Work under this Agreement. To evidence compliance with Valero's minimum safety training requirements, Contractor shall certify in writing to Valero that each employee (identified by name and skill) assigned by Contractor to Valero's Work has completed Contractor Safety Council training (evidenced by a badge) and Valero's minimum safety training. Contractor will also conduct its own safety training in accordance with Contractor's policy for safety in the work force, and hold weekly safety meetings for its employees during the continuance of Work hereunder.

In addition to other rights of Valero, under this Agreement, Valero shall retain the right to request Contractor to remove from the refinery site, and from Valero's Work, any employee who violates safety requirements and/or, in the sole opinion of Valero, jeopardizes the safety of himself or others.

Contractor agrees to arrange for recovery and collection of all solid and hazardous wastes generated in performance of the Work (including but not limited to: paint residues, solvents, sand blasting dust, etc.); and shall arrange for proper transportation and disposal of such hazardous wastes in accordance with the federal and state Solid Waste Disposal Acts and regulations issued pursuant to those acts; and any other applicable statutes or regulations.

Contractor Employee Training and Safe Workplace Practices: Contractor acknowledges its duty to train its Employees in safe workplace practices and to inform its Employees of specific hazards associated with the Work it has undertaken to perform for Valero. Contractor warrants that it has trained and will continue to train its Employees in safe workplace practices and has informed and on an ongoing basis will continue to inform its Employees of hazards associated with the Work. Contractor further acknowledges that its continued compliance with the warranties of this paragraph are an integral part of Contractor's satisfactory performance under this Agreement. Contractor recognizes that Valero will periodically evaluate the Employee's training and the hazard communication provided by Contractor and that such evaluation may include observation of Contractor's Employees to verify that Contractor is fulfilling this warranty and that Contractor's Employees are utilizing safe workplace practices appropriate to the hazards associated with the Work. Should Valero find Contractor's Employee training, its communication of hazards associated with the Work, or contractor's safe workplace practices deficient, Valero reserves the right but not the obligation to advise Contractor's Representative of the deficiency and Contractor shall promptly coordinate with its site safety representative and undertake appropriate corrective measure. Contractor shall promptly thereafter report the measure(s) taken and the outcome of those measures to Valero's Representative and Safety Department and invite Valero's observation of its Employees' workplace practices subsequent to the corrective measures undertaken. Should the corrective measures undertaken by Contractor

Paulsboro EPC (Final)
Page 17

fail to remedy the deficiency, Valero reserves the right but not the obligation to require Contractor to suspend the Work until the deficiency is remedied and appropriate safe workplace practices are restored or implemented. Contractor specifically affirms that Valero's observation of or failure to observe any unsafe workplace practices of its Employees will not diminish Contractor's duty to ensure a safe workplace for its Employees nor transfer that duty to Valero. Contractor's failure to satisfy this warranty will subject Contractor to forfeiture of Work assigned to Contractor under this Agreement, or termination of this Agreement in it's entirety.

Notwithstanding the foregoing, Valero expressly reserves the right to immediately cancel this Agreement with Contractor and remove Contractor, its employees, agents, and/or subcontractors from the refinery site, if in the sole opinion of Valero, a Contractor, any of its employees, agents, and/or subcontractors are in violation of any safety requirements, rules, regulations, and/or safety-related permits which, in the sole opinion of Valero, jeopardizes the safety of himself or others; or creates an unreasonable risk of injury. Before cancelling this Agreement, Valero may, but is not required under any provisions of this Agreement, to first notify Contractor of any unsafe condition and give Contractor an opportunity to correct same prior to exercising its right under this paragraph (and Paragraph 31). Further, Valero expressly reserves the right to terminate a Contractor if Valero's failure to do so could expose Valero to claims and/or liability relative to state and federal safety and/or health rules and regulations.

22.   Permits and Licenses. Any permits, licenses and authorizations necessary for the construction of the Work and required to be obtained from any governmental authority, other than the building permit, and Contractor's contractors license for the appropriate jurisdiction, shall be secured and paid for by Valero. It shall be the responsibility of Contractor to obtain the building permit and to make certain that the Work complies with all applicable building codes and all bulk and dimensional requirements set forth in any applicable zoning ordinances; provided, however, that it shall be the responsibility of Valero, and not of Contractor, to make certain that the facility described in the TSD will be allowed be used for the purpose intended in the zoning district in which the facility is situated. Contractor shall familiarize itself with all surveys, road, railroad, drainage, or other necessary permits (including environmental and Coast Guard rules) procured by Valero, and shall comply with all requirements thereof in any way relative to the performance of the Work. Contractor shall procure all hauling and other operating permits and licenses required by public authorities to be in Contractor's name, pay all charges and fees, and give all notices necessary and incident to the due and lawful prosecution of the Work.

23.   Compliance with Laws. Contractor shall give all notices and comply with all applicable laws, ordinances, rules, regulations and orders of any public authority bearing on the performance of the Work including, if applicable, those listed on Exhibit I attached hereto. Without in any way limiting the responsibilities of Contractor set forth above, if the Work or the TSD are at variance in any respect with any such laws, ordinances, rules, regulations or orders, Contractor shall promptly notify Valero in writing and shall promptly modify the Work and/or the TSD so that the Work and the TSD will be in compliance with such laws, ordinances, rules, regulations and orders, it being specifically understood (a) that the TSD

Paulsboro EPC (Final)
Page 18

Price, and the TSD Term shall not be adjusted for or in respect to any such variances unless the Work and/or the TSD are required to be modified as a result of a change in such laws, ordinances, rules, regulations or orders occurring after execution of this Agreement and (b) that if the Work and/or the TSD are required to be modified as a result of a change in such laws, ordinances, rules, regulations or orders occurring after execution of the applicable TSD, the TSD Price and the TSD Term shall be equitably adjusted in accordance with paragraph 25 upon claim made by Contractor to Valero as set forth in paragraph 25. If Contractor performs any Work contrary to such laws, ordinances, rules, regulations or orders Contractor shall assume full responsibility therefor and shall bear all costs attributable thereto. Contractor agrees to indemnify and hold Valero, its officers, agents and employees harmless from and against any and all claims or liabilities from or based upon Contractor's (as used, the term "Contractor" shall include Contractor's employees, agents, and subcontractors) violation of any such laws, ordinances, regulations, orders, permits or decrees. Contractor agrees to comply with all applicable EEO laws and regulations including the provisions of 41 C.F.R. 60-1.4(a), 41 C.F.R. 60-250.5(a) and 41 C.F.R. 60-741.5(a).

24.   Concealed and Unknown Conditions.

(a)   Should concealed and/or unknown conditions be encountered in the performance of the Work below the surface of the ground or should concealed and/or unknown conditions in an existing structure be at variance with the conditions indicated by the TSD, or other information furnished by Valero or should concealed and/or unknown physical conditions below the surface of the ground or concealed and/or unknown conditions in an existing structure of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inherent in work of the character provided for in the applicable TSD, be encountered, the TSD Price, and the TSD Term shall be equitably adjusted in accordance with paragraph 25 upon claim within a reasonable time after the first observance of such conditions.

(b)   The term "concealed and/or unknown" as used in paragraph 24(a) in respect to any specific condition shall mean (i) that the actual presence of such specific condition could not prior to the date of this Agreement, be viewed by Contractor by means of a field inspection of the site of the Work, (ii) that Contractor was not, prior to the date of this Agreement, aware of the actual presence of such specific condition and (iii) that Contractor could not, in accordance with generally-accepted engineering standards and practices and based upon information available to Contractor prior to the date of this Agreement, have reasonably foreseen the actual presence of such specific condition. To the extent that Contractor was, prior to the date of this Agreement, aware of or could, in accordance with generally-accepted engineering standards and practices and based upon information available to Contractor prior to the date of this Agreement, have reasonably foreseen the actual presence of any specific condition below the surface of the ground or in an existing structure, such specific condition shall not be considered to be a concealed and/or unknown condition. To the extent that Contractor was, prior to the date of this Agreement, aware of or could, in accordance with generally-accepted engineering standards and practices and based upon information available to Contractor prior to the date of this

Paulsboro EPC (Final)
Page 19

Agreement, have reasonably foreseen the actual presence of any specific condition below the surface of the ground or in an existing structure based upon the report given by Valero to Contractor prior to the date of this Agreement and mentioned in paragraph 24(a), such specific condition shall not be deemed to be a concealed and/or unknown condition.

25.   Claims and Extensions. If Contractor claims that any instruction provided by Valero and/or any act or omission of Valero or of any employee, agent or representative of Valero, involves extra cost and/or that, in accordance with paragraph 23, any change has occurred after execution of the applicable TSD in applicable laws, ordinances, rules, regulations or orders of any public authority having jurisdiction over the Work, and/or that, in accordance with paragraphs 24(a) and 24(b), concealed and/or unknown conditions have been encountered, Contractor shall give written notice and explanation thereof within ten (10) days after the receipt of such instructions, the occurrence of such act or omission, the learning about the effect of such change and/or the incurring of such expenses and/or costs and, provided that such claim is reasonable and supported by clear evidence, such claim shall be treated as a change in the Work for which the TSD Price and the Project Schedule (including the Project Date Certain) shall be equitably adjusted. Notwithstanding anything to the contrary set forth herein, the TSD Price shall not be increased, and the Project Schedule (including the Project Date Certain) shall not be extended, if and to the extent that such increase or extension shall be attributable to the fault or omission of Contractor and/or any party retained by, through or under Contractor in connection with the Work.

26.   Intellectual Property.  Contractor shall indemnify, defend and hold Valero, its parent, subsidiaries, affiliates and their directors, officers and employees (collectively, the "Valero Parties") harmless with respect to any claim, demand, suit or proceeding brought against the Valero Parties based on a claim that design, engineering, materials or services, or any part thereof, furnished by Contractor or Contractor's subcontractors under this Agreement constitutes an infringement or a contributory infringement, willful or otherwise, of any patent, copyright, trade secret or other proprietary right of any third party. Valero shall notify Contractor immediately of any claim that any information provided pursuant to this Agreement has been provided in violation of this paragraph. Provided that Valero has afforded Contractor the notice required hereby, Contractor shall provide a defense and competent counsel on behalf of the Valero Parties and shall assume the responsibility to pay all costs, to include such reasonable attorney fees, of defending such claim, demand, suits or proceeding and any damages that may be awarded therein against the Valero Parties. If the materials purchased or services rendered hereunder, or any part thereof, are in such claim, demand, suit or proceeding held to constitute infringement of any patent, copyright or other proprietary right of any third party and the use thereof is enjoined, or the settlement made requires the use of services or materials purchased hereunder to be discontinued, Contractor shall, at its own expenses, and at its option, either procure for Valero the right to continue using such materials or services, replace the same with non-infringing materials which conform to the available specifications or modify such materials or services in a manner acceptable to Valero so it becomes non-infringing.

Paulsboro EPC (Final)
Page 20.

Valero hereby represents, warrants, and covenants that all specifications, drawings, schematics, specifications, plans, technical information, Marks, or other information (the "Intellectual Property") provided (or to be provided) by Valero to Contractor are the sole and exclusive property of Valero or have been made available to Valero under suitable license or other agreement to use. The provision of such information by Valero will not infringe on or otherwise violate any third party's rights, if any, in and to such information. Contractor shall notify Valero immediately of any claim that any information provided pursuant to this Agreement has been provided in violation of this paragraph. Provided that Contractor has afforded Valero the notice required hereby, Valero shall provide a defense and competent counsel on behalf of Contractor and shall assume the responsibility to pay all costs, to include such reasonable attorney fees, of defending such claim, demand, suits or proceeding and any damages that may be awarded therein against the Contractor. Further, Valero shall indemnify, defend, and hold harmless Contractor from all claims, damages, expenses, resulting from a violation of this paragraph, and shall reimburse Contractor fully for any damages or other payments that Contractor shall be obligated to pay as result of Valero's breach of this paragraph.

27.   Information furnished by Valero and Information Developed under the Agreement.

A.   Contractor agrees that information furnished by Valero to Contractor and information developed hereunder, including any drawings and designs, is the personal property of Valero, and such information shall not be divulged by Contractor to another or be used in any way by Contractor or pursuant to a contract or undertaking with any person except Valero, provided that the foregoing restrictions do not apply:

   1.   Information which at the time of its disclosure or development hereunder is, or which thereafter becomes other than by act or omission of Contractor, part of the public domain.

   2.   Information which Contractor can show was in Contractor's possession in tangible form at the time of disclosure or development hereunder and was not acquired, directly or indirectly, from Valero.

   3.   Information which was received by Contractor after the time of disclosure by Valero or development hereunder from a third party who has a lawful right to disclose it to Contractor and who did not require Contractor to hold it in confidence.

B.   The originals of all drawings, calculations, etc., used or developed hereunder shall be provided to Valero, provided that Contractor may retain one copy for its files. The expense of Contractor's copy is considered part of the cost of the Work. Contractor hereby disclaims any and all liability arising from the use of any drawings, plans, specifications or calculations developed hereunder at any facility other than Valero's Paulsboro refinery or Valero's Texas City refinery and Valero shall indemnify and hold Contractor harmless from any and all damages resulting from such use.

C.   Contractor will not, without the prior written consent of Valero, use Valero's name in connection with any publicity, release, advertisement or other publication.

28.   Information Furnished by the Contractor not Developed under this Agreement. Contractor may disclose to Valero information of a confidential nature and all information disclosed to Valero by Contractor under this Agreement shall be deemed to be nonconfidential unless marked confidential by Contractor. Contractor warrants that the possession, use and/or disclosure by Valero of any information received from Contractor shall not violate the proprietary rights of any third party. If based on its possession, use and/or disclosure of such information Valero is charged with misuse of any such proprietary rights of any third party, Contractor shall indemnify, defend and hold Valero harmless from any and all costs, expenses (including without limitation legal expenses), damages, losses, liabilities or judgments.

29.   Audit. Contractor shall maintain complete and accurate records in accordance with generally accepted accounting principles to substantiate all charges hereunder and to verify Contractor's work progress and OSHA compliance (collectively "Audit Purposes"). Contractor's records relating to the Audit Purposes, which shall include but not be limited to, accounting records, written policies and procedures, subcontract files (including proposals of successful and unsuccessful bidders), original estimates, estimating worksheets, correspondence, change order files (including documentation covering negotiated settlements), and any other supporting evidence necessary to substantiate charges related to this Agreement (all the foregoing hereinafter referred to as "Records") shall be open to inspection and subject to audit and/or reproduction, during normal working hours, by Valero's agent or its authorized representative to the extent necessary to adequately permit evaluation and verification of any invoices, payments or claims submitted by the Contractor or any of his Payees in performance the Work and for the Audit Purposes.

For the purpose of such audits, inspections, examinations, and evaluations, the Valero's agent or authorized representative shall have access to said Records from the effective date of this Agreement, for the duration of the Work, and until three (3) years after the date of final payment by Valero to Contractor pursuant to this Agreement.

Valero's agent or its authorized representative shall have access to the Contractor's facilities, shall have access to all necessary Records, and shall be provided adequate and appropriate work space, in order to conduct audits in compliance with this section. Valero's agent or its authorized representative shall give auditees reasonable advance notice of intended audits.

Contractor shall require all subcontractors, insurance agents, and material suppliers (Payees) to comply with the provisions of Paragraph 29 by insertion of the requirements hereof in a written contract agreement between Contractor and Payee.

Notwithstanding anything to the contrary hereinabove, Valero's audit rights in relation to Lump Sum work shall be limited to Contractor providing unpriced copies of the Records.

VAL 002907

30.   Termination for Contractor's Breach.

(a)   If Contractor shall become insolvent or receivership or bankruptcy proceedings shall be commenced by or against Contractor or if Contractor shall make an assignment for the benefit of its creditors, or if Contractor shall fail or refuse to perform a material portion of the Work and Contractor does not commence to cure such failure or refusal immediately following written notice by Valero and thereafter diligently pursue such cure to completion, or if Contractor falls behind the Project Schedule by thirty (30) days or more (as such Project Schedule may be adjusted due to Force Majeure, a Change Order or a failure of Valero to perform timely its obligations hereunder in each instance that causes an actual delay in the performance of Critical Path Items), and Contractor does not commence to cure such failure or refusal to Valero's reasonable satisfaction immediately following written notice by Valero and thereafter diligently pursue such cure to completion, then this Agreement shall be deemed to have been breached by Contractor, and Valero, without prejudice to and cumulative of all other rights and remedies which Valero may have as the result of such breach, shall have the option to terminate this Agreement forthwith by giving written notice thereof to Contractor.

(b)   In the event of any such termination for Contractor's breach, Valero shall be entitled to enter upon Contractor's jobsite premises and take possession of and remove all drawings, specifications, materials, equipment and supplies intended to be incorporated into the Work; to have assigned to it all subcontracts and other contractual arrangements entered into by Contractor with any subcontractors, vendors, materialmen and suppliers for any part of the Work; and to make such arrangements as Valero in its sole discretion shall deem necessary or appropriate for the completion of the Work. Valero shall have the obligation to mitigate the costs related to such completion.

(c)   In the event Contractor breaches this Agreement as set forth in Section 30(a) and Contractor does not commence to cure such failure or refusal to Valero's reasonable satisfaction immediately following written notice by Valero and thereafter diligently pursue such cure to completion, then Valero in addition to its right to terminate the Agreement, may choose not to terminate the Agreement and in that case to arrange for another contractor or Valero to assist Contractor in completing the Work. Contractor will cooperate fully with Valero and any contractor hired pursuant to this section.

(d)   Contractor shall not be entitled to receive any further payment until the Work is finished. If the actual cost to Valero of finishing the Work exceeds the unpaid balance of the TSD Price, Contractor shall pay the difference to Valero within thirty (30) days of the completion of the Work. If the actual cost to Valero of finishing the Work plus 10% (which 10% shall be a liquidated sum representing Valero's costs for managerial and administrative services) is less than the unpaid balance of the TSD Price, then Valero shall within thirty (30) days pay Contractor the amount theretofore

Paulsboro EPC (Final)
Page 23

unpaid on Contractor's properly documented application for payment submitted for Work performed to the date of termination.

(e)     Failure of Valero to exercise any of the rights given under paragraphs 30(a)-(d) shall not excuse Contractor from compliance with the provisions of the Agreement nor prejudice in any way Valero's right to exercise any such rights in respect of such or any subsequent breach by the Contractor.

31.     Termination for Valero's Convenience.  In addition to Valero's rights to terminate this Agreement as provided in paragraphs 30(a)-(d), Valero shall have the right to terminate this Agreement by giving Contractor written notice, the effective date of such termination being three (3) business days after the date of receipt by Contractor of such notice. In the event of such termination Valero shall pay to Contractor: (i) all of the Milestones actually achieved (or portion thereof) by Contractor as of the effective date of termination; (ii) all actual reasonable costs incurred by Contractor in properly terminating the Work including cancellation fees incurred in terminating commitments to third parties, and (iii) the actual cost that is incurred by Contractor in disposition of all completed or uncompleted Work in accordance with Valero's instructions. Valero will then have the obligation within thirty (30) days to advise Contractor as to disposition of any partially completed or uncompleted parts of the Work in the event such items are in Contractor's facilities. The payment terms of this Agreement will apply to payment for termination costs due under this paragraph 31.

32.     Termination for Valero's Breach.

(a)     If Valero shall become insolvent or receivership or bankruptcy proceedings shall be commenced by or against Valero, or if Valero shall make an assignment for the benefit of its creditors, or if Valero shall fail or refuse to pay any undisputed amounts owed pursuant this Agreement and does not commence to cure such failure or refusal within thirty (30) days following written notice by Contractor then this Agreement shall be deemed to have been breached by Valero, and Contractor, without prejudice to and cumulative of all other rights and remedies which Contractor may have as the result of such breach, shall have the option to terminate this Agreement forthwith by giving notice thereof to Valero.

(b) . . .  In the event of any such termination, Contractor shall use its best efforts to negotiate termination charges with all subcontractors, vendors, materialmen and suppliers which reflect actual costs incurred in the performance of the Work plus a prorate profit on Work actually performed minus amounts previously paid and any salvage value realized or realizable.

(c)     Upon the settlement of all claims of subcontractors, vendors, materialmen and suppliers and upon presentation of Contractor's final application for payment, Valero shall pay to Contractor an amount equal to Contractor's costs (including prorata profit) on Work actually performed minus amounts previously paid and any salvage value realized or realizable.

Paulsboro EPC (Final)
Page 24

33. <u>Bonds</u>. Contractor agrees to use its best efforts to obtain whatever bonds, including performance bonds, which may be requested by Valero. Costs for such bond shall be reimbursed by Valero upon Contractor's submission of invoice for same.

34. <u>Assignment</u>. Neither Contractor nor Valero may assign this Agreement in whole or in part, without the written consent of both Contractor and Valero. However, in the event substantially all of Valero's assets are acquired by or transferred to another entity, Valero shall have the right to assign this Agreement to such entity without Contractor's consent.

35. <u>Subcontractors</u>. Contractor may not subcontract any material on-site portion of the Work contracted for under this Agreement without the prior written approval of Valero. Contractor agrees that it will include as a condition of its contract with subcontractor, that subcontractor will abide by the terms and conditions of this Agreement, including, but not limited to the provisions of Paragraphs 9, 13, 20, and 21.

36. <u>Disposal of Surplus Materials</u>. All sales of surplus materials, equipment, supplies, and scrap furnished by Valero or furnished by Contractor and reimbursed by Valero, must have the prior written approval of the Valero representative. All returns from such sales shall belong to Valero. Title to all surplus items furnished by Contractor under a lump sum Agreement shall remain with the Contractor.

37. <u>Force Majeure</u>. Both Parties shall be excused from performance (except for payment obligations), and shall incur no liability for any loss or damage due to any delay or failure to perform its obligations under this Agreement when caused by occurrences beyond the reasonable control of the Party affected, to include, but not be limited to, acts of governmental authority, acts of God, strikes or other concerted acts of workmen, availability, substitution or diversion of labor or materials and operating equipment not caused by Contractor's acts or omissions, fires, explosion, riots, war, rebellion and sabotage. Performance shall be excused hereunder only if the affected Party delivers written notice of the occurrence, including a full description thereof, to the other Party within five (5) days from the time Contractor becomes aware of the event giving rise to the delay and endeavors to remedy such non-performance with all reasonable dispatch. If performance is delayed under this Section, the Project Schedule (including the Project Date Certain) shall be adjusted to the extent the event of Force Majeure causes and actual delay in the performance of a Critical Path Item. Each party shall bear its own costs related to the Force Majeure, provided, however, Valero shall be responsible for costs directly related to any third party equipment rentals incurred by Contractor as a result of the Force Majeure.

38. <u>Taxes</u>. Contractor's invoices shall provide separated charges for all material, equipment and labor provided under this Agreement.

   A. <u>Material and Equipment Costs</u>:  Valero will be responsible for the payment of all New Jersey sales and use taxes, if any, on material and equipment provided under this Agreement. Valero will provide the Contractor a New Jersey *Exempt Use Certificate* (Form ST-4), to be used by Contractor to purchase all manufacturing materials and equipment tax-free. Contractor shall be responsible for the payment of all New Jersey

Paulsboro EPC (Final)
Page 25

sales and use tax on non-manufacturing consumable materials, supplies, tools and equipment used in the performance of this Agreement, and Contractor shall not collect such taxes from Valero.

B.   Labor Costs: Valero will be responsible for payment of all New Jersey sales and use taxes, if any, on any taxable labor performed under this Agreement. Valero will provide the Contractor with a New Jersey *Certificate of Capital Improvement* (Form ST-8) for all services provided under this Agreement. This certificate should be provided to all sub-contractors performing services on behalf of the Contractor to exempt such services from New Jersey sales and use tax.

C.   In the event Contractor is assessed sales and use taxes by the governmental authorities of the State of New Jersey for transactions related to the performance of this Agreement for which Valero has issued a Form ST-4 or ST-8 as provided above, Contractor will notify Valero within five (5) business days and allow Valero the opportunity to argue and defend its position relative to the imposition of such taxes. Pending the outcome of Valero's defense of such position, Contractor will not pay any such taxes or assessments unless Contractor has a good faith belief, after consultation with counsel, that it is required to do so. In the event Contractor properly notifies Valero as provided above, and Contractor nonetheless is required to pay such taxes as a result of Valero's failure to comply with any applicable laws or regulations governing the payment of such levies, the amount of any payments so made by Contractor shall be reimbursed by Valero upon submission of Contractor's invoices therefor.

39.   Arbitration. Any controversy, cause of action, dispute or claim arising out of, relating to, or in connection with, this Agreement, or the breach, termination or validity thereof, shall be settled by arbitration in accordance with the Commercial Arbitration Rules (the "Rules") of the American Arbitration Association, as amended and in effect at the time of filing the demand for arbitration. The tribunal for the arbitration shall consist of three arbitrators, one to be designated by each Party and the third to be selected by the mutual agreement of the two arbitrators. Each Party shall designate its arbitrator within twenty (20) days of receiving a notice of arbitration. Prior to acceptance of appointment as an arbitrator, each arbitrator shall have read and affirmatively agreed to observe all provisions of the American Arbitration Association's Code of Ethics for Arbitrators in Commercial Disputes. THE EXPEDITED PROCEDURES SET FORTH IN THE RULES SHALL APPLY AND THE SUBSTANTIVE AND PROCEDURAL LAWS (EXCLUDING ANY CONFLICT-OF-LAWS, RULES OR PRINCIPLES WHICH MAY REFER THE LAWS OF THE STATE OF TEXAS TO THE LAWS OF ANOTHER JURISDICTION PROVISIONS) OF THE STATE OF TEXAS SHALL APPLY. This Agreement involves interstate commerce in several ways, including, without limitation, the fact that the facilities buy and sell materials in interstate commerce and work performed in the facilities affects interstate commerce. The choice of Texas law shall not be interpreted as a choice to exclude applicability of the Federal Arbitration Act to the enforceability and scope of this arbitration provision. It is therefore specifically understood that both Texas and federal law, neither to

the exclusion of the other, apply to the enforceability and scope of this provision, and, in the event of a conflict between Texas and federal law, the law maximizing the enforceability and scope of this provision, including laws relating to appellate remedies, may be invoked, without excluding applicability of other law, by the Party seeking to compel arbitration. If, for purposes of determining Texas or federal law, a conflict or difference of opinion exists between lower state courts and lower federal courts, as the case may be, this arbitration provision, by agreement, selects the precedent of that lower state court or that lower federal court that maximizes the enforceability and scope of this arbitration provision. The arbitration shall take place in Houston, Texas. The Parties specifically agree that the judgment or award of the tribunal shall be final and binding on each Party and for all purposes. Judgment upon an arbitration award may be entered in any court having jurisdiction. This arbitration provision shall survive the termination of this Agreement.

40.   Conflict of Interest and Ethics.

A.   Contractor in performing its obligations under this Agreement shall establish appropriate business standards, procedures and controls including those deemed necessary to avoid any real or apparent impropriety or adverse impact on the interests of the Valero Parties.

B.   All payments by Valero to Contractor will be received by Contractor for its own account and Contractor is not authorized to offer, give or promise any part of such payments, directly or indirectly, to any government official, political party or official thereof, or any candidate for political office.

C.   Contractor shall exercise all reasonable care and diligence to prevent any actions or conditions which could result in a conflict with Valero's best interests. This obligation shall apply to the activities of the employees, agents and subcontractors of Contractor in their relations with the employees of Valero and their families and/or third parties arising from this Agreement. Such efforts shall include, but not be limited to, establishing precautions to prevent their employees, agents or subcontractors making, receiving, providing or offering any substantial gifts, extravagant entertainment, payments, loans or other considerations.

41.   Entirety. This Agreement comprises the entire agreement between Valero and Contractor and there are no conversations, understandings, agreements, conditions or representations, express or implied with reference to the subject matter hereof that are not merged herein or superseded hereby. This Agreement shall be binding on the Parties hereto, their respective heirs, representatives, successors and assigns.

42.   Amendment. The terms and conditions of this Agreement can only be amended by a writing signed by both Parties.

43.   Captions. All captions are inserted only by purposes of reference and shall not be used to interpret the clauses to which they apply.

Paulsboro EPC (Final)
Page 27

44. Waiver of Breach. The failure of Valero or Contractor at any time to require performance of any provision of this Agreement with respect to a particular matter shall in no way affect the right of Valero or Contractor to enforce such provision at a later date with respect to another matter, nor shall the waiver by Valero or Contractor of any breach or non-performance of any provision hereof be taken or held to be a waiver with respect to any succeeding breach or non-performance of such provision or as a waiver of the provision itself.

45. Survival. The parties obligations under Sections 12 13, 26, 27, 29 and 38 shall survive the expiration or termination of this Agreement.

46. Judicial Construction. The Parties agree that judicial construction and interpretation of this Agreement shall be made as though this Agreement were mutually drafted by both Parties, and shall not - on the basis of drafting - be construed in favor of or against a particular Party hereto.

In the event any provision herein shall be judicially interpreted or held to be void or otherwise unenforceable as written, it shall be deemed to be revised and modified to the extent necessary to make it legally enforceable. In any event, the remaining terms of the Agreement shall be enforceable as though the void or unenforceable provision did not exist.

47. Notices. All notices required or contemplated under this Agreement shall be given by prepaid first class mail or telex, and addressed as follows:

if to Valero:
Valero Refining Company—New Jersey
Paulsboro Refinery
800 Billingsport Road
Paulsboro, NJ 08066
Attn: Jerry Williams
Telephone:    856-224-6640
Fax:          856-224-6331

With copy to:
Valero Energy Corporation
One Valero Place ( 78212-3186)
P. O. Box 500
San Antonio, TX 78292-0500
Attn: EPC Services & Engineered Equipment Supply Base
      Manager
Telephone:    (210) 370-2674
Fax:          (210) 370-2304

if to Contractor:
Howe-Baker Engineers, Ltd
3102 E Fifth Street

Paulsboro EPC (Final)
Page 28

VAL 002913

Tyler, Texas 75701
Attn: Ric Steele
Telephone:   (903) 595-7750
Fax:         (903) 597-7758

With copy to:
Howe-Baker Engineers, Ltd
3102 E Fifth Street
Tyler, Texas 75701
Attn: General Counsel
Telephone: (903) 595-7919
Fax:        (903) 595-7916

48.   Employer's Registration Numbers. Contractor is, and during performance hereof will continue to be, registered as an employer under applicable federal and other laws, and its employer's registration numbers are:

Federal: 75-2912742                   State: _____
Taxpayer ID: _____             Contractors License No. N/A

49.   Governing Law; Venue. THE PARTIES AGREE THAT THIS AGREEMENT SHALL BE CONSTRUED PURSUANT TO THE LAWS OF THE STATE OF TEXAS, WITHOUT REFERENCE TO PRINCIPLES OF CONFLICTS OF LAW OF TEXAS OR ANY OTHER JURISDICTION AND, WHERE APPLICABLE, THE LAWS OF THE UNITED STATES. SUBJECT ONLY TO THE ARBITRATION PROVISIONS ABOVE, FOR ANY ACTION ARISING UNDER, OR RELATED TO, THIS AGREEMENT, THE PARTIES AGREE THAT EXCLUSIVE VENUE FOR SUCH ACTION SHALL BE IN THE STATE OR FEDERAL DISTRICT COURTS SITTING IN HOUSTON, HARRIS COUNTY, TEXAS.

50.   LIMITATION OF LIABILITY

NOTWITHSTANDING ANYTHING TO THE CONTRARY UNDER THIS AGREEMENT CONTRACTOR'S CUMMULATIVE LIABILITY ARISING OUT OF OR IN ANY MANNER RELATED TO ITS PERFORMANCE OF THE WORK UNDER THIS AGREEMENT SHALL NOT EXCEED IN THE AGGREGATE TEN MILLION DOLLARS ($10,000,000) WHETHER COVERED BY INSURANCES OR NOT, AND WHETHER SUCH LIABILITY ARISES IN CONTRACT, TORT, STATUTE, EQUITY OR OTHER THEORY OF LAW (INCLUDING, BUT NOT LIMITED TO THE FAULT, NEGLIGENCE OR STRICT LIABILITY OF CONTRACTOR); PROVIDED HOWEVER, THE LIMITATION STATED IN THIS PARAGRAPH SHALL NOT BE OPERATIVE ON BEHALF OF THE INSURANCE PROVIDERS TO LIMIT AMOUNTS THAT ARE RECOVERABLE UNDER THE INSURANCE REQUIRED BY SECTION 9 HEREOF BUT FOR SUCH LIMITATION.

NEITHER PARTY SHALL BE RESPONSIBLE OR HELD LIABLE HEREUNDER TO THE OTHER PARTY FOR PUNITIVE, INDIRECT, INCIDENTAL OR

Paulsboro EPC (Final)
Page 29

CONSEQUENTIAL DAMAGES, INCLUDING WITHOUT LIMITATION, LIABILITY FOR LOSS OF USE, LOSS OF BUSINESS OPPORTUNITY, LOSS OF PROFIT OR REVENUE, LOSS OF PRODUCT OR OUTPUT, OR BUSINESS INTERRUPTION, UNLESS THE SAME ARISE FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE OFFICERS OR UPPER LEVEL MANAGEMENT OF SUCH PARTY. THE LIMITATIONS SET FORTH ABOVE APPLY WHETHER SUCH LIABILITY ARISES IN CONTRACT, TORT, STATUTE, EQUITY OR OTHER THEORY OF LAW (INCLUDING, BUT NOT LIMITED TO THE FAULT, NEGLIGENCE OR STRICT LIABILITY OF EITHER PARTY).

51.   Third Party Beneficiaries. Except as otherwise expressly provided herein, nothing in this Contract, express or implied, is intended, or will be construed, to confer upon or give any person or entity other than Company and Contractor, and their respective successors and assigns, any rights, remedies or obligations under or by reason of this Contract or any Work performed hereunder.

IN WITNESS WHEREOF, this Agreement is entered into on the date first stated above.

VALERO REFINING COMPANY-
NEW JERSEY

By: _____
Name: Eugene Cotten
Title: Vice President

CONTRACTOR, by its general partner
Howe-Baker Management, LLC

By: _____
Name: James R. McAdory
Title: President & CEO

Paulsboro EPC (Final)
Page 30

VAL 002915



### EXHIBIT B-3
### CONTRACTOR PARTIAL AFFIDAVIT, LIEN WAIVER AND RELEASE

#### KNOW ALL MEN BY THESE PRESENTS

THAT _____ (hereinafter referred to as Contractor), in accordance with the terms and conditions of that certain Engineering Procurement and Construction Agreement between Valero Refining Company—New Jersey and _____, dated _____, 2002 (such agreement and all amendments thereto hereinafter are collectively referred to as the "Agreement") for work to be performed by Contractor thereunder (the "Work") and as part of or related to the _____ Unit, and all other equipment and installations related thereto to be located primarily in Paulsboro, New Jersey (such Work, _____ Unit and all other equipment and installations related thereto hereinafter collectively referred to as the "Project"), as further described in the Agreement and in consideration of:

_____dollars ($_____),
representing partial payment under said Agreement, hereby releases, forever discharges, and agrees to hold harmless and indemnify Valero Refining Company—New Jersey (hereinafter referred to as "Owner"), Owner's parent, affiliates, successors and assigns the Project, and the Project site which is located at Owner's Paulsboro, New Jersey refinery and any and all improvements, materials and equipment placed, erected or installed thereon (such site and Owner's refinery are hereinafter collectively referred to as "Owner's Site") from those liens, removal rights, debts, claims, charges, demands, encumbrances, security interests, mechanic's liens, supplier's, labor or materialmen's liens (constitutional, statutory and common law), obligations and causes of action of every nature which Contractor has, might have or could have against Owner, Owner's successors and assigns, and/or the Owner's Site by reason of or otherwise arising out of or in connection with said Agreement.

Contractor represents, certifies and warrants that all costs, charges, expenses, payrolls, bills for materials and equipment and other indebtedness connected with the Work for which the Owner and Owner's parent, affiliates, successors and assigns might be deemed responsible or Owner's Site or the other property might be encumbered, and claims incurred by Contractor or on its behalf, or against said Contractor, of every nature and kind whatsoever arising out of Work, labor, or services performed or material or equipment supplied, or because of the performance of the Contractor, have been paid or otherwise satisfied, from the proceeds of the payments received from Owner except for:

_____(Note: list or attach a schedule of unpaid amounts that are to be satisfied from the proceeds of this partial payment) which amounts Contractor represents, and warrants will be paid from this partial payment, and that there are no expected or known claims, liens, security interests or encumbrances in the nature of mechanic's or materialmen's liens or claims arising out of or in connection with the performance by Contractor of the Work to be performed by Contractor under said Agreement and that this Partial Affidavit, Lien Waiver and General Release is made for the purpose of inducing payment under the said Agreement.

Contractor, further represents, certifies and warrants that each of its subcontractors and sub-suppliers has made full payment of all costs, charges, expenses, bills and claims incurred by them or on their behalf of every nature and kind whatsoever arising out of Work, labor or services performed or material or equipment supplied or because of the performance of the Contractor or its subcontractors and sub-suppliers under said Agreement.

AS ADDITIONAL CONSIDERATION FOR THE PARTIAL PAYMENT, CONTRACTOR AGREES TO

INDEMNIFY AND HOLD HARMLESS OWNER AND ITS PARENT AND AFFILIATES, AND OWNER'S SITE, FROM AND AGAINST ALL COSTS, LOSSES, DAMAGES, CLAIMS, CAUSES OF ACTION, JUDGMENTS AND EXPENSES, INCLUDING ATTORNEY'S FEES ARISING OUT OF OR IN CONNECTION WITH CLAIMS AGAINST OWNER AND ITS PARENT AND/OR AFFILIATES, AND OWNER'S SITE WHICH CLAIMS ARISE OUT OF THE PERFORMANCE OF THE WORK UNDER THE AGREEMENT AND WHICH MAY BE ASSERTED BY THE CONTRACTOR OR ANY OF ITS SUBCONTRACTORS OR SUB-SUPPLIERS OF ANY TIER OR ANY OF THEIR REPRESENTATIVES, OFFICERS, OR EMPLOYEES.

The foregoing shall not relieve the Contractor of its obligations under the provisions of said Agreement as amended, or applicable law, which have not been expressly and specifically released or discharged herein or by their nature survive completion of the Work or services including, without limitation, warranties, guarantees and indemnities, all as set forth in said Agreement.

IN WITNESS WHEREOF the undersigned has duly executed this Partial Affidavit, Lien Waiver and General Release this _____ day of _____, _____.

[insert name of Contractor]

Principal:_____

By:_____

Authorized Signature

Name and Title

STATE OF _____

COUNTY OF _____

_____ being duly sworn deposes and says that he/she is the _____ of the _____, that he/she is duly authorized to execute the foregoing Lien Waiver and General Release and to make this Partial Affidavit, and that the representations, certifications, warranties and statements made in the foregoing Lien Waiver and General Release and in this Partial Affidavit, are true to his/her own knowledge.

_____

EXHIBIT B-4
CONT. FINAL AFFIDAVIT

VAL 002930

Signature

Subscribed and sworn to before me this _____ day of _____, _____.

Notary Public

## EXHIBIT B-4
## CONTRACTOR FINAL AFFIDAVIT, LIEN WAIVER AND RELEASE

### KNOW ALL MEN BY THESE PRESENTS

THAT _____ (hereinafter referred to as Contractor), in accordance with the terms and conditions of that certain Engineering Procurement and Construction Agreement between Valero Refining Company—New Jersey and _____, dated _____, 2002 (such agreement and all amendments thereto hereinafter are collectively referred to as the "Agreement") for work to be performed by Contractor thereunder (the "Work") and as part of or related to the _____Unit, and all other equipment and installations related thereto to be located primarily in Paulsboro, New Jersey (such Work, _____ Unit and all other equipment and installations related thereto hereinafter collectively referred to as "the Project"), as further described in the Agreement and in consideration of:

_____dollars ($_____),

representing final payment under said Agreement, hereby releases, forever discharges, and agrees to hold harmless and indemnify Valero Refining Company—New Jersey (hereinafter referred to as "Owner"), Owner's parent, affiliates, successors and assigns, the Project, and the Project site which is located at Owner's Paulsboro, New Jersey refinery and any and all improvements, materials and equipment placed, erected or installed thereon (such site and Owner's refinery are hereinafter collectively referred to as "Owner's Site") from those liens, removal rights, debts, claims, charges, demands, encumbrances, security interests, mechanic's liens, supplier's, labor or materialmen's liens (constitutional, statutory and common law), obligations and causes of action of every nature which Contractor has, might have or could have against Owner, Owner's successors and assigns, and/or the Owner's Site by reason of or otherwise arising out of or in connection with said Agreement.

Contractor represents, certifies and warrants that all costs, charges, expenses, payrolls, bills for materials and equipment and other indebtedness connected with the Work for which the Owner and Owner's parent, affiliates, successors and assigns might be deemed responsible or Owner's Site or the other property might be encumbered, and claims incurred by Contractor or on its behalf, or against said Contractor, of every nature and kind whatsoever arising out of Work, labor, or services performed or material or equipment supplied, or because of the performance of the Contractor, have been paid or otherwise satisfied, from the proceeds of the payments received from Owner, and that there are no expected or known claims, liens, security interests or encumbrances in the nature of mechanic's or materialmen's liens or claims arising out of or in connection with the performance by Contractor of the Work to be performed by Contractor under said Agreement and that this Final Affidavit, Lien Waiver and Release is made for the purpose of inducing payment under the said Agreement.

Contractor, further represents, certifies and warrants that each of its subcontractors and sub-suppliers has made full payment of all costs, charges, expenses, bills and claims incurred by them or on their behalf arising out of Work, labor or services performed or material or equipment supplied or because of the performance of the

PAULSBORO EPC (FINAL)

Contractor or its subcontractors and sub-suppliers under said Agreement.

AS ADDITIONAL CONSIDERATION FOR THE FINAL PAYMENT, CONTRACTOR AGREES TO INDEMNIFY AND HOLD HARMLESS OWNER AND OWNER'S PARENT AND AFFILIATES, AND OWNER'S SITE, FROM AND AGAINST ALL COSTS, LOSSES, DAMAGES, CLAIMS, CAUSES OF ACTION, JUDGMENTS AND EXPENSES, INCLUDING ATTORNEY'S FEES ARISING OUT OF OR IN CONNECTION WITH CLAIMS AGAINST OWNER AND OWNER'S PARENT AND AFFILIATES, AND OWNER'S SITE WHICH CLAIMS ARISE OUT OF THE PERFORMANCE OF THE WORK UNDER THE AGREEMENT AND WHICH MAY BE ASSERTED BY THE CONTRACTOR OR ANY OF ITS SUBCONTRACTORS OR SUB-SUPPLIERS OF ANY TIER OR ANY OF THEIR REPRESENTATIVES, OFFICERS, OR EMPLOYEES.

The foregoing shall not relieve the Contractor of their obligations under the provisions of said Agreement, or applicable law, which have not been expressly and specifically released or discharged herein or by their nature survive completion of the Work or services including, without limitation, warranties, guarantees and indemnities, all as set forth in said Agreement.

IN WITNESS WHEREOF the undersigned has duly executed this Final Affidavit, Lien Waiver and Release

this _____ day of _____ , _____ .

[insert name of Contractor]

Principal: _____

By: _____
Authorized Signature

_____
Name and Title

STATE OF _____

COUNTY OF _____

_____ being duly sworn deposes and says that he/she is the _____ of the _____, that he/she is duly authorized to execute the foregoing Lien Waiver and Release and to make this Final Affidavit, and that the representations, certifications, warranties and statements made in the foregoing Lien Waiver and Release and in this Final Affidavit, are true to his/her own knowledge.

_____

Signature

Subscribed and sworn to before me this _____ day of _____, _____.

_____

Notary Public

VAL 002933

# EXHIBIT 2

HOWE-BAKER ENGINEERS, LTD. 3102 East Fifth Street, Tyler, Texas 75701, Phone: 903/597-0311 Fax: 903/595-7759

# INVOICE

| | |
|---|---|
| Invoice Number | 63936 |
| Invoice Date | 3-29-04 |
| Page | 1 Of 3 |



**CBI** Howe-Baker
Process & Technology

TO: VALERO REFINING COMPANY-NEW JERSEY
    800 BILLINGSPORT ROAD
    PAULSBORO, NJ 08066-1036

    ATTN: MR. PAT DOUGHERTY

WIRE TO:
BANK OF AMERICA, N.A.
DALLAS, TX.
ABA NO. 111000012
HOWE-BAKER ENGINEERS, LTD.
ACCOUNT NO. 003752192593

| | |
|---|---|
| Tax ID Number | 75-2912742 |
| Customer Order No | 4500264499 |
| Terms | NET 30 DAYS VIA BANK WIRE TRANSFER |
| Date Shipped | |
| Shipping Terms | Via    H-B Ref    J-1901 |

| Item | Qty | Description | | | Unit Price | Amount |
|---|---|---|---|---|---|---|
| | | UOP CCR PLATFORMER PROJECT, PAULSBORO, NJ | | | | |
| | | ORIGINAL CONTRACT AMOUNT | $110,145,980.00 | | | |
| | | APPROVED CHANGE ORDERS | $4,217,640.00 | | | |
| | | CURRENT CONTRACT VALUE | $114,363,620.00 | | | |
| | | MILESTONE INVOICE #21 | % | AMOUNT | | |
| | 1 | ENGINEERING | | | | |
| | | NONE | 0.000000% | | | |
| | | CURRENT EARNED MILESTONE | 0.000000% | | | |
| | | PREVIOUSLY EARNED | 17.175176% | | | |
| | | CUMULATIVE EARNED TO DATE | 17.175176% | $19,642,153.00 | | |
| | | LESS PREVIOUS INVOICE AMOUNTS | | $19,606,533.00 | | |
| | | CURRENT GROSS INVOICE AMOUNT | | $35,620.00 | | |
| | | LESS 10% RETENTION | | ($3,562.00) | | |
| | |     NET ENGINEERING AMOUNT DUE | | $32,058.00 | | $32,058.00 |
| | 2 | PROCUREMENT | | | | |
| | | NONE | 0.000000% | | | |
| | | CURRENT EARNED MILESTONE | 0.000000% | | | |
| | | PREVIOUSLY EARNED | 37.105201% | | | |
| | | CUMULATIVE EARNED TO DATE | 37.105201% | $42,434,851.00 | | |
| | | <div align="center">CONTINUED ON PAGE 2</div> | | | | |

ALL WORK DONE BY THIS COMPANY IN PRODUCING THE MERCHANDISE LISTED IN THIS INVOICE AND THE PRICES CHARGED ARE IN ACCORDANCE WITH GOVERNMENT REGULATIONS. SELLER ALSO REPRESENTS THAT THE GOODS OR SERVICES COVERED BY THIS INVOICE HAVE BEEN PRODUCED OR RENDERED IN ACCORDANCE WITH THE PROVISIONS OF THE FAIR LABOR STANDARDS ACT OF 1938, AS AMENDED.

INV Doc # 510710 3823
4-16-04
[signature]

ORIGINAL

VAL 003722

HOWE-BAKER ENGINEERS, LTD. 3102 East Fifth Street, Tyler, Texas 75701, Phone: 903/597-0311 Fax: 903/595-7759



Invoice Number:   63936
          To:   VALERO REFINING COMPANY-NJ.
     H-B Ref:   J-1901
        Page:        2        of        3

| Item | Qty | Description | | Unit Price | Amount |
|------|-----|-------------|--|------------|--------|
| | | LESS PREVIOUS INVOICE AMOUNTS | $42,357,899.00 | | |
| | | CURRENT GROSS INVOICE AMOUNT | $76,952.00 | | |
| | | LESS 10% RETENTION | ($7,695.00) | | |
| | | NET PROCUREMENT AMOUNT DUE | $69,257.00 | | $69,257.00 |
| | | | | | |
| 3 | | **FABRICATION** | | | |
| | | NONE | 0.000000% | | |
| | | CURRENT EARNED MILESTONE | 0.000000% | | |
| | | | | | |
| | | PREVIOUSLY EARNED | 10.738889% | | |
| | | CUMULATIVE EARNED TO DATE | 10.738889% | $12,281,382.00 | |
| 4 | | LESS PREVIOUS INVOICE AMOUNTS | | $12,259,111.00 | |
| | | CURRENT GROSS INVOICE AMOUNT | | $22,271.00 | |
| | | LESS 10% RETENTION | | ($2,227.00) | |
| | | NET FABRICATION AMOUNT DUE | | $20,044.00 | $20,044.00 |
| | 18 | | | | |
| | | **CONSTRUCTION** | | | |
| | | COMPLETE INSTALLATION OF LADDERS | | | |
| | | AND PLATFORMS | 0.400000% | | |
| | 18 | COMPLETE AREA PAVING | 2.000000% | | |
| | | CURRENT EARNED MILESTONE | 2.400000% | | |
| | | | | | |
| | | PREVIOUSLY EARNED | 30.076332% | | |
| | | CUMULATIVE EARNED TO DATE | 32.476332% | $37,141,109.00 | |
| | | LESS PREVIOUS INVOICE AMOUNTS | | $34,334,007.00 | |
| | | CURRENT GROSS INVOICE AMOUNT | | $2,807,102.00 | |
| | | LESS 10% RETENTION | | ($280,710.00) | |
| | | NET CONSTRUCTION AMOUNT DUE | | $2,526,392.00 | $2,526,392.00 |
| | | | | | |
| | | TOTAL AMOUNT DUE THIS INVOICE | | | $2,647,751.00 |
| | | | | | |
| | | CONTINUED ON PAGE 3 | | | |

3/30/04

---

ALL WORK DONE BY THIS COMPANY IN PRODUCING THE MERCHANDISE LISTED IN THIS INVOICE AND THE PRICES CHARGED ARE IN ACCORDANCE WITH GOVERNMENT REGULATIONS. SELLER ALSO REPRESENTS THAT THE GOODS OR SERVICES COVERED BY THIS INVOICE HAVE BEEN PRODUCED OR RENDERED IN ACCORDANCE WITH THE PROVISIONS OF THE FAIR LABOR STANDARDS ACT OF 1938, AS AMENDED.

ORIGINAL

VAL 003723

HOWE-BAKER ENGINEERS, LTD. 3102 East Fifth Street, Tyler, Texas 75701, Phone: 903/597-0311 Fax: 903/595-7759



Invoice Number:   63936
         To:   VALERO REFINING COMPANY-NJ.
H-B Ref:   J-1901
      Page:      3      of      3

| Item | Qty | Description | Unit Price | Amount |
|---|---|---|---|---|
| | | **SUMMARY** | | |
| | | CUMULATIVE EARNED TO DATE          97.495598%     $111,499,495.00 | | |
| | | PREVIOUSLY INVOICED               95.095598%     $108,557,550.00 | | |
| | | GROSS AMOUNT CURRENT INVOICE       2.400000%      $2,941,945.00 | | |
| | | RETENTION CURRENT INVOICE                          $294,194.00 | | |
| | | NET AMOUNT CURRENT INVOICE                        $2,647,751.00 | | |
| | | | | |
| | | RETENTION WITHHELD PREVIOUS INVOICES              $10,855,760.00 | | |
| | | RETENTION WITHHELD CURRENT INVOICE                  $294,194.00 | | |
| | | RETENTION WITHHELD TO DATE                        $11,149,954.00 | | |
| | | | | |
| | | NET AMOUNT PREVIOUSLY INVOICED                    $97,701,790.00 | | |
| | | NET AMOUNT CURRENT INVOICE                         $2,647,751.00 | | |
| | | NET AMOUNT INVOICED TO DATE                       $100,349,541.00 | | |

ALL WORK DONE BY THIS COMPANY IN PRODUCING THE MERCHANDISE LISTED IN THIS INVOICE AND THE PRICES
CHARGED ARE IN ACCORDANCE WITH GOVERNMENT REGULATIONS.  SELLER ALSO REPRESENTS THAT THE GOODS OR
SERVICES COVERED BY THIS INVOICE HAVE BEEN PRODUCED OR RENDERED IN ACCORDANCE WITH THE PROVISIONS OF
THE FAIR LABOR STANDARDS ACT OF 1938, AS AMENDED.

ORIGINAL

VAL 003724

## EXHIBIT B-3

### CONTRACTOR PARTIAL AFFIDAVIT, LIEN WAIVER AND RELEASE

#### KNOW ALL MEN BY THESE PRESENTS

THAT Howe-Baker Engineers, Ltd. (hereinafter referred to as Contractor), in accordance with the terms and conditions of that certain Engineering Procurement and Construction Agreement between Valero Refining Company—New Jersey and Howe-Baker Engineers, Ltd., dated November 26, 2002 (such agreement and all amendments thereto hereinafter are collectively referred to as the "Agreement") for work to be performed by Contractor thereunder (the "Work") and as part of or related to the UOP CCR Platformer Unit, and all other equipment and installations related thereto to be located primarily in Paulsboro, New Jersey (such Work, UOP CCR Platformer Unit and all other equipment and installations related thereto hereinafter collectively referred to as the "Project"), as further described in the Agreement and in consideration of:

Two Million Six Hundred Forty-Seven Thousand Seven Hundred Fifty-One and 00/100 dollars ($2,647,751.00), representing partial payment under said Agreement, hereby releases, forever discharges, and agrees to hold harmless and indemnify Valero Refining Company—New Jersey (hereinafter referred to as "Owner"), Owner's parent, affiliates, successors and assigns the Project, and the Project site which is located at Owner's Paulsboro, New Jersey refinery and any and all improvements, materials and equipment placed, erected or installed thereon (such site and Owner's refinery are hereinafter collectively referred to as "Owner's Site") from those liens, removal rights, debts, claims, charges, demands, encumbrances, security interests, mechanic's liens, supplier's, labor or materialmen's liens (constitutional, statutory and common law), obligations and causes of action of every nature which Contractor has, might have or could have against Owner, Owner's successors and assigns, and/or the Owner's Site by reason of or otherwise arising out of or in connection with said Agreement.

Contractor represents, certifies and warrants that all costs, charges, expenses, payrolls, bills for materials and equipment and other indebtedness connected with the Work for which the Owner and Owner's parent, affiliates, successors and assigns might be deemed responsible or Owner's Site or the other property might be encumbered, and claims incurred by Contractor or on its behalf, or against said Contractor, of every nature and kind whatsoever arising out of Work, labor, or services performed or material or equipment supplied, or because of the performance of the Contractor, have been paid or otherwise satisfied, from the proceeds of the payments received from Owner except for:                          .

__None__                          which amounts Contractor represents, and warrants will be paid or otherwise satisfied from this partial payment, and that except for the lien claims listed on the attached Exhibit 1, there are no expected or known claims, liens, security interests or encumbrances in the nature of mechanic's or materialmen's liens or claims arising out of or in connection with the performance by Contractor of the Work to be performed by Contractor under said Agreement and that this Partial Affidavit, Lien Waiver and General Release is made for the purpose of inducing payment under the said Agreement.

Contractor, further represents, certifies and warrants that each of its subcontractors and sub-suppliers has made full payment of all costs, charges, expenses, bills and claims incurred by them or on their behalf of every nature and kind whatsoever arising out of Work, labor or services performed or material or equipment supplied or because of the performance of the Contractor or its subcontractors and sub-suppliers under said Agreement.

AS ADDITIONAL CONSIDERATION FOR THE PARTIAL PAYMENT, CONTRACTOR AGREES TO INDEMNIFY AND HOLD HARMLESS OWNER AND ITS PARENT AND AFFILIATES, AND OWNER'S SITE, FROM AND AGAINST ALL COSTS, LOSSES, DAMAGES, CLAIMS, CAUSES OF ACTION, JUDGMENTS AND EXPENSES, INCLUDING ATTORNEY'S FEES ARISING OUT OF OR IN CONNECTION WITH CLAIMS AGAINST OWNER AND ITS PARENT AND/OR AFFILIATES, AND OWNER'S SITE WHICH CLAIMS ARISE OUT OF THE PERFORMANCE OF THE WORK UNDER THE AGREEMENT AND WHICH MAY BE ASSERTED BY THE CONTRACTOR  OR ANY OF ITS

VAL 003725

EXHIBIT B-3

SUBCONTRACTORS OR SUB-SUPPLIERS OF ANY TIER OR ANY OF THEIR REPRESENTATIVES, OFFICERS, OR EMPLOYEES.

The foregoing shall not relieve the Contractor of its obligations under the provisions of said Agreement as amended, or applicable law, which have not been expressly and specifically released or discharged herein or by their nature survive completion of the Work or services including, without limitation, warranties, guarantees and indemnities, all as set forth in said Agreement.

IN WITNESS WHEREOF the undersigned has duly executed this Partial Affidavit, Lien Waiver and General Release this 29th day of March, 2004.

HOWE-BAKER ENGINEERS, LTD.

By and Though Its General Partner

HOWE-BAKER MANAGEMENT, LLC

By: _____

Authorized Signature

Dennis C. Planic _____ Vice President of Finance

STATE OF TEXAS

COUNTY OF SMITH

Dennis C. Planic being duly sworn deposes and says that he is the Vice President of Finance of Howe-Baker Engineers, Ltd., that he is duly authorized to execute the foregoing Lien Waiver and General Release and to make this Partial Affidavit, and that the representations, certifications, warranties and statements made in the foregoing Lien Waiver and General Release and in this Partial Affidavit, are true to his/her own knowledge.

_____

Signature

Subscribed and sworn to before me this 29th day of March, 2004.

Carolyn J. Floyd

CAROLYN T. LLOYD
Notary Public
STATE OF TEXAS
My Comm. Exp. 2-22-2005

Carolyn T. Lloyd

Notary Public

VAL 003726

**EXHIBIT B-5**

**SECURITY AGREEMENT**

Upon receipt of $2,647,751.00 by Howe-Baker Engineers, Ltd. ("Seller") from Valero Refining Company-New Jersey ("Secured Party") Seller hereby grants to Secured Party a security interest in the amount of $2,647,751.00 in the Work as defined in that certain agreement dated November 26, 2002 between Seller and Secured Party (the "Agreement"). This security interest is to secure Seller's performance of the terms and conditions of the Agreement and to evidence Secured Party's payment of progress payments to Seller for Work performed under the Agreement. This security interest includes any parts to be used for, parts assembled in, and parts to be assembled in the Work and paid for by Secured Party, as well as cash and non cash proceeds, increases, substitutions, replacements, additions and accessions of all of the foregoing, to secure the performance of Seller's obligations under the Agreement, and the amount of funds paid by Secured Party to Seller before delivery of the Work to Secured Party and acceptance thereof by Secured Party. Upon material breach of the Agreement, Secured Party may exercise any and all remedies of a secured party under Article 9 of the Uniform Commercial Code in addition to all remedies stated in the Agreement or otherwise available by law.

SELLER: HOWE-BAKER ENGINEERS, LTD.
By and Through Its General Partner
HOWE-BAKER MANAGEMENT, LLC

By: _____
      Dennis C. Planic, Vice President of Finance

VAL 003727

☒ WIRE TRANSFER / ☐ ACH REQUEST

**TO BE COMPLETED BY ORIGINATOR**

| Paying Company | | Company No. | Payment Due Date |
|---|---|---|---|
| **Valero Refining Co - New Jersey** | | **051** | **4/28/04** |

| Wire Transfer In The Amount Of | Document No. |
|---|---|
| **$ 2,647,751.00** | **5107103823** |

**PAYEE COMPANY INFORMATION**

| Name | A/P Vendor No. |
|---|---|
| **Howe-Baker Engineers, Ltd.** | **138583** |

| Address | Tax ID No. (For 1099 Use) |
|---|---|
| **3102 E. Fifth Street, P O Box 956** | **75-2912742** |

| City | State | Zip Code |
|---|---|---|
| **Tyler** | **TX** | **75710-0956** |

**WIRE INFORMATION**

| Bank Receiving Funds |
|---|
| **Bank of America, NA** |

| ABA No. | Account No. |
|---|---|
| **111000012** | **003752192593** |

| City | State | Zip Code |
|---|---|---|
| **Dallas** | **TX** | |

| Further Credit |
|---|

| Further Credit (cont'd) | Account No. |
|---|---|

| Reference |
|---|
| **Inv # 63936 ccr platform project** |

| Telephone Advice To | Telephone No. | Telex No. |
|---|---|---|

| Additional Information |
|---|

**CHARGE TO CODE**

| Amount Charged | Company # | G/L Account # | Cost Center # | WBS Element/Order # | Allocation |
|---|---|---|---|---|---|
| **2,647,751.00** | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**APPROVAL**

| Prepared By | Approved By |
|---|---|
| **Maureen R. Jones** | |
| NOTE:  Please notify Cash Operations of a payment requirement immediately.  This completed form must be received in Cash Operations by 9 a.m. on the transfer date. | Print Name
**Greg Paranto/ Michael Pesch** |

**TO BE COMPLETED BY TREASURY**

| Wire Transfer Attested By | Effective Date |
|---|---|

| TRANSFER FROM BANK:  (Place one 'X' in box) | |
|---|---|
| ☐ VEC Concentration A/C    ☐ Other (Bank Acct. No.) | |

| ☐ SAP Bank Acct. Information Verified | SAP Bank Selection | SAP Run Name |
|---|---|---|

| Multilink Released By | SAP Proposal Scheduled By |
|---|---|

| Transfer Approved By | Confirmation Call/Reference |
|---|---|

V1236.dot 2/99                    Distribution:  Treasury, Originator

VAL 003728

Maureen R. Jones
Valero Energy, New Jersey
Major Projects – Accounts Payable
800 Billingsport Road
Paulsboro, NJ 08066
Phone 856-224-6326 Fax 856-224-4347

# facsimile transmittal

| To: | George Garcia | Fax: | 210-370-2234 |
|---|---|---|---|
| From: | Maureen R. Jones | Date: | April 23, 2004 |
| Re: | Wire Transfer Request | Pages: | *8 including cover sheet.* |
| CC: | | | |

☑ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

The following is a wire transfer request and invoice for Howe-Baker Engineers, Ltd, Paulsboro Refinery.  This invoice # 63936 has been entered in SAP, Document Number 5107103823.  Please advise if you have any problems or concerns.  Thank you for your assistance.

Sincerely,

*Maureen*

Maureen

CONFIDENTIAL

VAL 003729

| Object | RefDocNo | Item | Debit date | ValueCOCur | Plan/COCur | Vendor | Name | User name | Doc. date |
|---|---|---|---|---|---|---|---|---|---|
| 559818 | 10230804 | 10 | 03/31/2004 | 280.00 | 280.00 | | 20 YD intermodal #200583 J>Schlump | FORTINC | 03/31/2004 |
| * | 10230804 | | | 280.00 | 280.00 | | | | |
| 743582 | 10230808 | 10 | 05/24/2004 | 27,500.00 | 27,500.00 | | SUPPLY 110 TON CRANE MANNED FOR PTR T/A | CONAWAYG | 03/31/2004 |
| * | 10230808 | | | 27,500.00 | 27,500.00 | | | | |
| PB02118.FGDU.P.03C | 4500257521 | 140 | 10/07/2003 | 1,212.59 | 36,627.72 | 106618 | FGDU ISBL ENGINEERING-BR JACOBS | JONESMR | 08/20/2002 |
| * | 4500257521 | | | 1,212.59 | 36,627.72 | | | | |
| PB02118.OSBL.P.03C | 4500257525 | 220 | 11/26/2003 | 19,266.46 | 150,000.00 | 106618 | CCR/FGDU OSBL-estimate to complete work | JONESMR | 08/20/2002 |
| * | 4500257525 | | | 19,266.46 | 150,000.00 | | | | |
| PB02118.G.01E | 4500258371 | 30 | 04/30/2003 | 43.70 | 530.00 | 109383 | rent (2) portable toilets ccr project | HUNTERB | 08/22/2002 |
| PB02118.G.01E | 4500258371 | 40 | 10/20/2003 | 65.00 | 530.00 | 109383 | rent (2) portable toilets ccr project | VANLEUVENC | 08/22/2002 |
| PB02118.G.01E | 4500258371 | 50 | 01/14/2004 | 220.00 | 530.00 | 109383 | rent (2) portable toilets ccr project | VANLEUVENC | 08/22/2002 |
| * | 4500258371 | | | 328.70 | 1,590.00 | | | | |
| 559817 | 4500261323 | 20 | 03/30/2003 | 7,866.50 | 18,817.00 | 109520 | CCR Site Demo. - Pressure Wash Conc. | FRIEBEYC | 09/06/2002 |
| * | 4500261323 | | | 7,866.50 | 18,817.00 | | | | |
| PB02118.FGDU.M.17N | 4500262268 | 170 | 01/07/2004 | 94,901.00 | 94,901.00 | 111462 | ASME CODE REACTOR VESSEL 85-R-3 | DONNELLYM | 09/10/2002 |
| * | 4500262268 | | | 94,901.00 | 94,901.00 | | | | |
| PB02118.G.01L | 4500262593 | 320 | 05/27/2004 | 12,780.09 | 16,000.00 | 109110 | Project and Admin Support | JONESMR | 09/11/2002 |
| PB02118.G.01L | 4500262593 | 330 | 05/27/2004 | 32,000.00 | 32,000.00 | 109110 | Project and Admin Support | CLIFTD | 09/11/2002 |
| PB02118.G.01L | 4500262593 | 340 | 06/30/2004 | 32,000.00 | 32,000.00 | 109110 | Project and Admin Support | CLIFTD | 09/11/2002 |
| PB02118.G.01L | 4500262593 | 350 | 06/30/2004 | 10,088.00 | 10,088.00 | 109110 | Project and Admin Support | CLIFTD | 09/11/2002 |
| * | 4500262593 | | | 86,868.09 | 90,088.00 | | | | |
| PB02118.G.01C | 4500262559 | 200 | 04/30/2004 | 25,439.20 | 35,000.00 | 106618 | Instrument, Electrial and Admin Support | KOEHLERR | 09/11/2002 |
| * | 4500262559 | | | 25,439.20 | 35,000.00 | | | | |
| PB02118.P.03C | 4500264499 | 50 | 10/31/2002 | 111,769.40 | 1,117,694.00 | 107791 | Milestone #3 CCR Engineering | MICHAELM | 09/18/2002 |
| PB02118.CCR.C.03C | 4500264499 | 110 | 11/27/2002 | 57,874.70 | 578,750.00 | 107791 | Milestone #4 One line / Piperacks | MICHAELM | 09/18/2002 |
| PB02118.CCR.C.M | 4500264499 | 120 | 11/27/2002 | 101,359.30 | 1,013,593.00 | 107791 | Milestone #4 CCR / Pumps/Vessel/Steel/Co | MICHAELM | 09/18/2002 |
| PB02118.CCR.C.03C | 4500264499 | 130 | 12/31/2002 | 47,536.70 | 475,367.00 | 107791 | Milestone #5 IFC U/G Piping Details | MICHAELM | 09/18/2002 |
| PB02118.CCR.C.M | 4500264499 | 140 | 12/31/2002 | 159,348.90 | 1,593,489.00 | 107791 | Milestone #5 GA Drwgs for recyc compress | MICHAELM | 09/18/2002 |
| PB02118.CCR.C.F | 4500264499 | 150 | 12/31/2002 | 65,670.00 | 656,700.00 | 107791 | Milestone #5 Fabrication | MICHAELM | 09/18/2002 |
| PB02118.CCR.C.03C | 4500264499 | 160 | 01/31/2003 | 326,599.36 | 3,265,993.00 | 107791 | Milestone #6 - Engineering | MICHAELM | 09/18/2002 |
| PB02118.CCR.C.M | 4500264499 | 170 | 01/31/2003 | 63,178.60 | 631,781.00 | 107791 | Milestone #6 - Procurement | MICHAELM | 09/18/2002 |
| PB02118.CCR.C.F | 4500264499 | 180 | 01/31/2003 | 42,834.00 | 428,345.00 | 107791 | Milestone #6 - Fabrication | MICHAELM | 09/18/2002 |
| PB02118.CCR.C.M | 4500264499 | 200 | 02/19/2003 | 486,462.12 | 4,864,622.27 | 107791 | Milestone #7 - Procurement | MICHAELM | 09/18/2002 |
| PB02118.CCR.C.C | 4500264499 | 210 | 02/19/2003 | 79,063.54 | 790,638.39 | 107791 | Milestone #7 - Construction | MICHAELM | 09/18/2002 |
| PB02118.CCR.C.C | 4500264499 | 220 | 03/31/2003 | 466.00 | 4,655.00 | 107791 | Milestone #8 - Construction | MICHAELM | 09/18/2002 |
| PB02118.CCR.C.03C | 4500264499 | 330 | 03/31/2003 | 220,760.00 | 2,253,903.00 | 107791 | Milestone #8 - Engineering | VANLEUVENC | 09/18/2002 |
| PB02118.CCR.C.F | 4500264499 | 350 | 03/31/2003 | 121,038.00 | 1,210,382.00 | 107791 | Milestone #8 - Fabrication | MICHAELM | 09/18/2002 |
| PB02118.CCR.C.C | 4500264499 | 520 | 06/30/2002 | 0.30 | 2,874,810.00 | 107791 | Milestone #11 - Construction | KOEHLERR | 09/18/2002 |
| PB02118.CCR.C.C | 4500264499 | 620 | 09/10/2003 | 995,314.40 | 1,883,497.00 | 107791 | Milestone #14 - Construction | KOEHLERR | 09/18/2002 |
| PB02118.CCR.C.C | 4500264499 | 650 | 10/31/2003 | 991,313.20 | 2,676,547.00 | 107791 | Milestone #15 - Construction | JONESMR | 09/18/2002 |
| PB02118.CCR.C.C | 4500264499 | 670 | 11/26/2003 | 0.40 | 3,459,686.00 | 107791 | Milestone #16 - Construction | JONESMR | 09/18/2002 |
| PB02118.CCR.C.C | 4500264499 | 780 | 01/30/2004 | 2,379,153.00 | 2,379,153.00 | 107791 | Milestone #18 - Construction | DONNELLYM | 09/18/2002 |
| PB02118.CCR.C.03C | 4500264499 | 710 | 01/30/2004 | 393,054.00 | 393,054.00 | 107791 | Mech Comp 50% of Ret - Engr | CLIFTD | 09/18/2002 |
| PB02118.CCR.C.F | 4500264499 | 720 | 01/30/2004 | 361,881.00 | 361,881.00 | 107791 | Mech Comp 50% of Ret - Fab | CLIFTD | 09/18/2002 |
| PB02118.CCR.C.M | 4500264499 | 730 | 01/30/2004 | 439,368.00 | 439,368.00 | 107791 | Mech Comp 50% of Ret - Proc | CLIFTD | 09/18/2002 |
| PB02118.CCR.C.C | 4500264499 | 740 | 01/30/2004 | 1,846,964.00 | 1,846,964.00 | 107791 | Mech Comp 50% of Ret - Constr | CLIFTD | 09/18/2002 |
| PB02118.CCR.C.03C | 4500264499 | 750 | 01/30/2004 | 1,201,978.00 | 1,201,978.00 | 107791 | Final Accept 50% of Ret - Engr | CLIFTD | 09/18/2002 |
| PB02118.CCR.C.F | 4500264499 | 760 | 01/30/2004 | 591,423.00 | 591,423.00 | 107791 | Final Accept 50% of Ret - Fab | CLIFTD | 09/18/2002 |
| PB02118.CCR.C.M | 4500264499 | 770 | 01/30/2004 | 1,787,405.00 | 1,787,405.00 | 107791 | Final Accept 50% of Ret - Proc | CLIFTD | 09/18/2002 |
| PB02118.CCR.C.C | 4500264499 | 780 | 01/30/2004 | 1,926,494.00 | 1,926,494.00 | 107791 | Final Accept 50% of Ret - Constr | CLIFTD | 09/18/2002 |
| PB02118.CCR.C.C | 4500264499 | 800 | 02/27/2004 | 498,275.40 | 2,482,649.00 | 107791 | Milestone #19 - Construction | JONESMR | 09/18/2002 |
| PB02118.CCR.C.M | 4500264499 | 820 | 01/30/2004 | 594,788.00 | 991,314.00 | 107791 | Comp Fab. Heater Radiant - Procurement | JONESMR | 09/18/2002 |
| PB02118.CCR.36.C | 4500264499 | 1230 | 09/03/2003 | 0.01 | 0.01 | 107791 | CO#VP-01/increased construct. costs | DONNELLYM | 09/18/2002 |



VAL 003730

| Object | RefDocNo | Item | Debit date | ValueCOCur | Plan/COCur | Vendor | Name | User name | Doc. date |
|---|---|---|---|---|---|---|---|---|---|
| PB02118.CCR.C.CN | 4500264499 | 1330 | 12/01/2003 | 2,092.20 | 2,150.00 | 107791 | COHHBI-45/min. fund'g for dresser rd. so | JONESMR | 09/18/2002 |
| PB02118.CCR.C.CN | 4500264499 | 1340 | 12/01/2003 | 5,770.00 | 5,770.00 | 107791 | COHHBI-44/5 full port globe valves | CLIFTD | 09/16/2002 |
| PB02118.CCR.C.CN | 4500264499 | 1350 | 12/01/2003 | 3,390.00 | 3,390.00 | 107791 | COHHBI-47/mod. to concrete rebar | CLIFTD | 09/18/2002 |
| PB02118.CCR.C.CN | 4500264499 | 1360 | 12/01/2003 | 13,450.00 | 13,450.00 | 107791 | COHHBI-48/fab changes by Hitachi Zoeen | CLIFTD | 09/18/2002 |
| PB02118.CCR.C.CN | 4500264499 | 1370 | 12/01/2003 | 5,560.00 | 5,560.00 | 107791 | COHHBI-23/Eng for new NRT Stripper | CLIFTD | 09/18/2002 |
| PB02118.CCR.C.M | 4500264499 | 1470 | 12/01/2003 | 309,021.00 | 309,021.00 | 107791 | Balance Procurement Retainage | CLIFTD | 09/18/2002 |
| PB02118.CCR.C.CN | 4500264499 | 1480 | 04/30/2004 | 20,100.00 | 20,100.00 | 107791 | COHHBI-51/52 Please see Text | CLIFTD | 09/18/2002 |
| PB02118.CCR.C.CN | 4500264499 | 1490 | 04/30/2004 | 3,670.00 | 3,670.00 | 107791 | COHHBI-53 Addition of Inspector for Perf | CLIFTD | 09/18/2002 |
| PB02118.CCR.C.CN | 4500264499 | 1510 | 04/30/2004 | 1,980.00 | 11,980.00 | 107791 | COHHBI-57 Additional engr and drafting t | JONESMR | 09/18/2003 |
| PB02118.CCR.C.CN | 4500264499 | 1520 | 04/30/2004 | 14,015.00 | 14,015.00 | 107791 | COHHBI-58 /59 Please see text | CLIFTD | 09/18/2002 |
| PB02118.CCR.C.CN | 4500264499 | 1530 | 04/30/2004 | 15,880.00 | 161,730.00 | 107791 | COHHBI-54 Concrete paving | JONESMR | 09/16/2002 |
| PB02118.CCR.C.CN | 4500264499 | 1550 | 04/30/2004 | 138,314.00 | 355,060.00 | 107791 | COHHBI-55 Knockout pot FGDU/CCR | JONESMR | 09/16/2002 |
| * | 4500264499 | | | 16419,813.87 | 44491,031.67 | | | | |
| PB02118.G.05E | 4500265759 | 40 | 03/11/2003 | 4.00 | 4,400.00 | 111008 | ADDITIONAL RENTAL PERIOD 1/14 TUR 4/7/03 | VANLEUVENC | 09/24/2002 |
| PB02118.G.05E | 4500265759 | 50 | 04/30/2003 | 510.00 | 4,400.00 | 111008 | ADDITIONAL RENTAL PERIOD 3 MONTHS | VANLEUVENC | 09/24/2002 |
| PB02118.G.05E | 4500265759 | 60 | 07/22/2003 | 1,934.00 | 4,664.00 | 111008 | ADDITIONAL RENTAL PERIOD 3 MONTHS | HUNTERB | 09/24/2002 |
| * | 4500265759 | | | 2,448.00 | 13,464.00 | | | | |
| PB02118.G.01L | 4500271894 | 30 | 12/23/2003 | 1,873.83 | 104,520.00 | 109850 | Contract Planning Support - CCR/FGDU/Bel | JONESMR | 10/17/2002 |
| PB02118.G.01L | 4500271894 | 40 | 01/30/2004 | 15,410.00 | 15,410.00 | 109850 | Contract Planning Support - CCR/FGDU/Bel | DONNELLYM | 10/17/2002 |
| PB02118.G.01L | 4500271894 | 50 | 04/30/2004 | 105,190.00 | 105,190.00 | 109850 | Contract Planning Support - CCR/FGDU/Bel | CLIFTD | 10/17/2002 |
| * | 4500271894 | | | 122,473.83 | 225,128.00 | | | | |
| PB02118.FGDU.M.14M | 4500273869 | 80 | 03/30/2004 | 12,700.00 | 12,700.00 | 134217 | 8S-K-1 FIELD WORK DURING T/A | NOYJ | 10/23/2002 |
| * | 4500273869 | | | 12,700.00 | 12,700.00 | | | | |
| PB02118.G.01L | 4500275504 | 180 | 04/30/2004 | 95,670.53 | 135,300.00 | 106618 | OSBL Construction Assist&Field Support | KOEHLERR | 10/29/2002 |
| PB02118.G.01L | 4500275504 | 190 | 04/30/2004 | 135,300.00 | 135,300.00 | 106618 | OSBL Construction Assist&Field Support | DONNELLYM | 10/29/2002 |
| PB02118.G.01L | 4500275504 | 200 | 04/30/2004 | 82,400.00 | 82,400.00 | 106618 | OSBL Construction Assist&Field Support | DONNELLYM | 10/29/2002 |
| * | 4500275504 | | | 313,370.53 | 353,000.00 | | | | |
| PB02118.G.01L | 4500276876 | 30 | 09/09/2003 | 1,500.00 | 1,500.00 | 121841 | CCR/FGDU OSBL HAZOP | DONNELLYM | 11/01/2002 |
| * | 4500276876 | | | 1,500.00 | 1,500.00 | | | | |
| 559818 | 4500277290 | 30 | 04/25/2003 | 11,525.27 | 31,000.00 | 106618 | CCR Site Prep - Sub. 13 Area | KOEHLERR | 11/04/2002 |
| * | 4500277290 | | | 11,525.27 | 31,000.00 | | | | |
| 559812 | 4500279976 | 20 | 02/28/2003 | 57.50 | 14,000.00 | 106618 | FGDU OSBL Piping Tie-Ins, FCC Related | KOEHLERR | 11/13/2002 |
| * | 4500279976 | | | 57.50 | 14,000.00 | | | | |
| 559816 | 4500280712 | 40 | 04/06/2003 | 16,100.00 | 20,000.00 | 106618 | CHANGE NOTICE FOR EXPLORATOR DIG | KOEHLERR | 11/14/2002 |
| 559816 | 4500280712 | 50 | 06/04/2003 | 1,909.96 | 5,000.00 | 106618 | FGDU/CCR EXPLORATORY DIGGING | KOEHLERR | 11/14/2002 |
| * | 4500280712 | | | 18,009.96 | 25,000.00 | | | | |
| 743584 | 4500283735 | 50 | 10/29/2003 | 638.84 | 6,000.00 | 116760 | Repro Services for Major Projects | KOEHLERR | 11/25/2002 |
| 743584 | 4500283735 | 60 | 11/26/2003 | 6,000.00 | 6,000.00 | 116760 | Repro Services for Major Projects | KOEHLERR | 11/25/2002 |
| 743584 | 4500283735 | 70 | 12/29/2003 | 2,299.96 | 6,000.00 | 116760 | Repro Services for Major Projects | KOEHLERR | 11/25/2002 |
| 743584 | 4500283735 | 80 | 01/29/2004 | 6,000.00 | 6,000.00 | 116760 | Repro Services for Major Projects | CLIFTD | 11/25/2002 |
| 743584 | 4500283735 | 90 | 02/27/2004 | 6,000.00 | 6,000.00 | 116760 | Repro Services for Major Projects | CLIFTD | 11/25/2002 |
| 743584 | 4500283735 | 100 | 03/29/2004 | 6,000.00 | 6,000.00 | 116760 | Repro Services for Major Projects | CLIFTD | 11/25/2002 |
| * | 4500283735 | | | 26,938.78 | 36,000.00 | | | | |
| 559818 | 4500285163 | 50 | 03/13/2003 | 382.02 | 382.02 | 109567 | JANITORIAL SERVICES FOR NEW ANALYER BLG. | DONNELLYM | 12/02/2002 |
| * | 4500285163 | | | 382.02 | 382.02 | | | | |
| 609640 | 4500285799 | 30 | 01/30/2004 | 814.20 | 2,194.20 | 107953 | RENTAL OF F150 STD CAB 2 WD | VANLEUVENC | 12/03/2002 |
| 609640 | 4500285799 | 40 | 01/30/2004 | 2,194.20 | 2,194.20 | 107953 | RENTAL OF F150 STD CAB 2 WD | CLIFTD | 12/03/2002 |
| 559818 | 4500285799 | 50 | 03/31/2004 | 1,677.34 | 1,677.34 | 107953 | REPAIR RENTAL | CLIFTD | 12/03/2002 |
| * | 4500285799 | | | 4,685.74 | 6,065.74 | | | | |
| 743586 | 4500289466 | 130 | 04/06/2004 | 15,000.00 | 15,000.00 | 106531 | FIELD SERVICE FOR K-8 | CLIFTD | 12/12/2002 |
| * | 4500289466 | | | 15,000.00 | 15,000.00 | | | | |
| 576840 | 4500289711 | 20 | 02/07/2003 | 1,525.42 | 18,508.00 | 106618 | Milestone #2 100% Upgrade +/- 35% est | KOEHLERR | 12/13/2002 |

4500 26 0 499

|   |   |   | 3/29/04 Milestone #21 |
|---|---|---|---|
| ④ | 2,379,153.00 | 700 | 1001522033 |
| ① | 2092.20 | 1330 | 1001522045 |
| ① | 5770.00 | 1340 | 1001522050 |
| ① | 3390.00 | 1350 | 1001522055 |
| ① | 13450.00 | 1360 | 1001522056 |
| ① | 5560.00 | 1370 | 1001522061 |
| ② | 20100.00 | 1480 | 1001522063 |
| ① | 3670.00 | 1490 | 1001522064 |
| ① | 1980.00 | 1510 | 1001522087 |
| ② | 14015.00 | 1520 | 1001522097 |
| ② | 15080.00 | 1530 | 1001522106 |
| 2,3,4 | 138314.00 | 1550 | 1001522114 |

remaining items

45,361.60   -620
45,176.80   620   1001539039

VAL 003732

# EXHIBIT 3

1

1    IN THE UNITED STATES DISTRICT COURT
        FOR THE DISTRICT OF NEW JERSEY
2                CAMDEN VICINAGE

3                                    COPY

                        - - -

4    RIGGS DISTLER & COMPANY, INC., :
                                    :
5              Plaintiff,           :
                                    :
6         vs                        :
                                    :
7    VALERO REFINING COMPANY -      :
     NEW JERSEY, et al.,            :
8                                   :  CIVIL ACTION NO.
               Defendants.          :  03-CV-5854
9                        - - -

10

11

12

13                       - - -

14            Tuesday, March 8, 2005

15                       - - -

16

17

18            Oral deposition of TERRY DOWNS was

19    taken, pursuant to notice, at BALLARD, SPAHR,

20    ANDREWS & INGERSOLL, LLP, 1735 Market Street,

21    Philadelphia, Pennsylvania commencing at 10:14

22    a.m. on the above date, before M. Kathleen Muino,

23    Professional Shorthand Reporter and Notary Public,

24    there being present:



**Royal Court Reporting Service, Inc.**
230 South 15th Street, 6th Floor, Philadelphia, PA 19102
Phone: 215-732-0655 • 1-888-595-RCRS • Fax: 215-732-7655

TERRY DOWNS

52

1      that dollar amount was attributable to worker

2      services performed outside the scope of Jones'

3      subcontract?

4      A.          None of this compares to the scope of

5      Jones' contract.  This is all milestone payments

6      that are agreed upon between Howe-Baker and

7      Valero.  This is not a -- this is not -- one

8      doesn't compare to the other.  The percent

9      complete is based on Jones' weekly and monthly

10     reports.

11     Q.          Well, I didn't ask you about percentage

12     complete of Jones' weekly report.  I'm asking you

13     about the figure of $22,967,556.  You say that

14     relates to the milestones set forth and agreed to

15     between Howe-Baker and Valero?

16     A.          Yes, that's correct.

17     Q.          And those were construction milestones,

18     correct?

19     A.          They were listed as construction

20     milestones.  They had "C"s in front of them.

21     Q.          And the construction milestones would

22     have been milestones that were reached using the

23     services of Jones under its subcontract, correct?

24                 MR. RAY:  Object to form.

53

1              THE WITNESS:   The milestone itself --

2    BY MR. PREZIOSI:

3    Q.        Yes.

4    A.        -- is just that, a milestone.   The value

5    of the milestone does not pertain to anything to

6    do with the Jones' portion of the work.

7    Q.        The milestone corresponds to construction

8    work done, correct?

9              MR. RAY:   Object to form and asked

10   and answered.

11             THE WITNESS:   Say that again, please.

12   BY MR. PREZIOSI:

13   Q.        The milestones as they were being billed

14   under the construction component of this invoice

15   were milestones that related to construction work,

16   correct?

17             MR. RAY:   Object to form.

18             THE WITNESS:   They were an item of

19   work that was complete in the construction segment

20   of the project.

21   BY MR. PREZIOSI:

22   Q.        Thank you.   And as of September of 2003,

23   what, if any, milestones that had been reached

24   under the construction component of the EPC



90

1        Q.        And when Jones was terminated -- let's

2    just step back for a second.

3              Is it true that CBI took over the

4    construction aspect of the project when Jones was

5    terminated?

6    A.        Yes.

7        Q.        And is it true that CBI performed a

8    certain portion of that work with its own forces?

9    A.        Yes.

10       Q.        And do you know which portion of the work

11   CBI performed with its own forces?

12   A.        CBI performed the module installation,

13   the piping installation; major equipment

14   installation, less the compressors.

15       Q.        And how did CBI provide you with its cost

16   information for this work?

17   A.        CBI has a -- they have their own

18   cost-tracking mechanism.  The cost information

19   that I received from CBI was in the form of an

20   invoice, the same as a third party.

21       Q.        And would that invoice detail the work

22   that was being performed?

23   A.        The invoice would only detail the amount

24   that was chargeable to the project, be it a



93

1    Q.      You start out, you're trying to cost out

2    the project?

3    A.      Right.

4    Q.      So you know what X contract is and what Y

5    contract is, and you know you're going to have to

6    cost that out during the course of the remainder

7    of the project.

8            Now, with CBI, my understanding is you

9    started with a $3 million purchase order for the

10   heater, which was -- how did you track -- as CBI

11   took on more work, how did you track the increase

12   in that scope?

13   A.      The increase --

14           MR. RAY:  Object to form.

15           THE WITNESS:  The increase and the

16   scope initially was based on the delta difference

17   of what was calculated Jones to complete.  I mean,

18   that was your basis of starting --

19   BY MS. UNDERWOOD:

20   Q.      Right.

21   A.      -- was what was left out of -- you know,

22   if there was 41 or $39 million of Jones, then the

23   delta between what was paid and where we're at,

24   that was the initial idea of where the costs ought



94

1    to go.

2    Q.        Sitting here today, do you know how much

3    CBI invoiced for the remainder of the Jones' work

4    after Jones was terminated?

5              MR. RAY:  I'm just going to object to

6    form.  It fails to take into account the prior

7    testimony in totality.

8    BY MS. UNDERWOOD.

9    Q.        I think you can probably answer that.

10   A.        Somewhere around $38 million.

11   Q.        And I believe you testified that the cost

12   to complete, including the amount of payments that

13   Howe-Baker actually made to Jones, the cost to

14   complete for the construction aspect of the

15   project was 64 million; is that correct?

16   A.        Okay.  It was $64 million including

17   Jones.

18   Q.        Right, including the $8 million --

19   A.        Correct.

20   Q.        -- whatever payment you made?

21   A.        And going back to the question that you

22   just previously asked me, the scope of CB&I

23   Services was a little bit different than the

24   entire Jones' scope, and so there was -- the



TERRY DOWNS

95

1    compressor work, for example, was in Jones' scope,

2    the electrical was in Jones' scope and not in

3    CB&I's.

4    Q.      So that there was additional work --

5             MS. UNDERWOOD:  Could you read his

6    testimony back on that answer to that question.

7                - - -

8             (Whereupon, the previous answer was

9    read back.)

10                - - -

11    BY MS. UNDERWOOD:

12    Q.      And those were -- for instance, the

13    electrical was a portion that Howe-Baker

14    subcontracted out to another contractor to

15    complete, correct?

16    A.      That is correct.

17    Q.      Just as they did with Schwertner for a

18    certain portion of the site or concrete work,

19    whatever that was?

20    A.      That is correct.

21    Q.      But that is all included in that $64

22    million?

23    A.      That is correct.

24    Q.      Do you know what portion of the $64



**Royal Court Reporting Service, Inc.**
230 South 15th Street, 6th Floor, Philadelphia, PA 19102
Phone: 215-732-0655 • 1-888-595-RCRS • Fax: 215-732-7655

# EXHIBIT 4

## Howe-Baker Engineers LTD. CCR Work Payment Summary

| Invoice Reference # | Document Number | Invoice Description Text | Document Date | Entry Date | Amount in DC | Subtotal |
|---|---|---|---|---|---|---|
| 59648 | 5100066634 | PL06 UOP CCR PLATFORMER | 07/31/2002 | 09/23/2002 | 1,368,125.00 | 1,368,125.00 |
| 59849 | 5100066635 | PL06 ENG PLOT PLAN FAB RELEASE EQUIPMEN | 08/29/2002 | 09/23/2002 | 492,525.00 | 1,860,650.00 |
| 60100 | 5100067691 | PL06 CCR PLATFORMER 90% | 09/30/2002 | 10/23/2002 | 3,787,128.00 | 5,647,778.00 |
| 60293 | 5100068598 | PL06 CCR MILESTONE # | 10/31/2002 | 11/14/2002 | 1,433,109.00 | 7,080,887.00 |
| 60472 | 5100070060 | PL06 CCR MILESTONE #5 | 11/25/2002 | 12/18/2002 | 2,453,000.00 | 9,533,887.00 |
| 60658 | 5100071572 | PL06 MILESTONE # CCR | 12/23/2002 | 01/20/2003 | 3,904,034.00 | 13,437,921.00 |
| 60829 | 5100073350 | PL06 MILESTONE #7-CCR | 01/24/2003 | 03/03/2003 | 5,089,735.00 | 18,527,656.00 |
| 61032 | 5100074797 | PL06 MILESTONE #8 | 02/27/2003 | 03/31/2003 | 5,527,282.00 | 24,054,938.00 |
| 61190 | 5100075861 | PL06 MILESTONE #9 | 03/25/2003 | 04/29/2003 | 7,310,138.00 | 31,365,076.00 |
| 61419 | 5100076984 | PL06 CCR MILESTONE #10 | 04/25/2003 | 05/21/2003 | 7,842,916.00 | 39,207,992.00 |
| 61673 | 5100079475 | pl06 dngineering srv ccr project | 05/27/2003 | 06/26/2003 | 5,233,583.00 | 44,441,575.00 |
| 61978 | 5100081767 | pl06 ccr project | 06/26/2003 | 08/06/2003 | 6,438,025.00 | 50,879,600.00 |
| 62226 | 5100082641 | pl06 CCR platformers project | 07/25/2003 | 08/22/2003 | 10,893,806.00 | 61,773,406.00 |
| 62509 | 5100083369 | pl06 milestone 14 | 08/26/2003 | 09/05/2003 | 13,147,139.00 | 74,920,545.00 |
| 62734 | 5100086465 | pl06 milestone 15 | 09/25/2003 | 10/21/2003 | 8,893,966.00 | 83,814,511.00 |
| 62975 | 5100088572 | pl06 10/27/03 Milestone #16 | 10/27/2003 | 11/24/2003 | 2,799,215.00 | 86,613,726.00 |
| 63195 | 5100090247 | pl06 ccr platformer project | 11/25/2003 | 12/18/2003 | 2,560,852.00 | 89,174,578.00 |
| 63370 | 5100092045 | pl06 12/29/03 Milestone # 18 | 12/29/2003 | 01/16/2004 | 5,984,685.00 | 95,159,263.00 |
| 63538 | 5100094374 | pl06 1/28/04 Milestone # 19 | 01/28/2004 | 02/20/2004 | 2,304,765.00 | 97,464,028.00 |
| 63823 | 5100096337 | pl06 2/25/04 Milestone # 20 | 02/25/2004 | 03/19/2004 | 2,237,762.00 | 99,701,790.00 |
| 63936 | 5100098369 | pl06 3/29/04 Milestone # 21 | 03/29/2004 | 04/16/2004 | 2,647,751.00 | 100,349,541.00 |
| 64163 | 5100101009 | pl06 4/26/04 Milestone #22 | 04/26/2004 | 05/19/2004 | 2,157,747.00 | 102,927,258.00 |
| 64164 | 5100101010 | pl06 4/26/04 Milestone # 23 | 04/26/2004 | 05/19/2004 | 5,718,181.00 | 108,645,439.00 |
| | | | | **Final Project Total:** | | 108,645,439.00 |

| Howe-Baker Engineers LTD. CCR Work Payment Summary | | | | | | |
|---|---|---|---|---|---|---|
| Invoice Reference # | Document Number | Invoice Description Text | Document Date | Entry Date | Amount in DC | Subtotal |
| 59648 | 5100066634 | PL06 UOP CCR PLATFORMER | 07/31/2002 | 09/23/2002 | 1,368,125.00 | 1,368,125.00 |
| 59849 | 5100066835 | PL06 ENG PLOT PLAN FAX/RELEASE EQUIPMEN | 08/29/2002 | 09/23/2002 | 492,525.00 | 1,860,650.00 |
| 60100 | 5100067691 | PL06 CCR PLATFORMER 90% | 09/30/2002 | 10/23/2002 | 3,787,128.00 | 5,647,778.00 |
| 60283 | 5100068596 | PL06 CCR MILESTONE #4 | 10/31/2002 | 11/14/2002 | 1,433,109.00 | 7,080,887.00 |
| 60472 | 5100070060 | PL06 CCR MILESTONE #5 | 11/25/2002 | 12/18/2002 | 2,453,000.00 | 9,533,887.00 |
| 60658 | 5100071572 | PL06 MILESTONE #6-CCR | 12/23/2002 | 01/20/2003 | 3,904,034.00 | 13,437,921.00 |
| 60829 | 5100073350 | PL06 MILESTONE #7-CCR | 01/24/2003 | 03/03/2003 | 5,089,735.00 | 18,527,656.00 |
| 61032 | 5100074792 | PL06 MILESTONE #8 | 02/27/2003 | 03/31/2003 | 5,527,282.00 | 24,054,938.00 |
| 61190 | 5100075861 | PL06 MILESTONE #9 | 03/25/2003 | 04/29/2003 | 7,310,138.00 | 31,365,076.00 |
| 61449 | 5100076984 | PL06 CCR MILESTONE #10 | 04/25/2003 | 05/21/2003 | 7,842,916.00 | 39,207,992.00 |
| 61673 | 5100079475 | pl06 dngineering srv ccr project | 05/27/2003 | 06/26/2003 | 5,233,583.00 | 44,441,575.00 |
| 61978 | 5100081767 | pl06 ccr project | 06/26/2003 | 08/06/2003 | 5,438,025.00 | 50,879,600.00 |
| 62226 | 5100082641 | pl06 CCR platformers project | 07/25/2003 | 08/22/2003 | 10,893,806.00 | 61,773,406.00 |
| 62509 | 5100083369 | pl06 milestone 14 | 08/26/2003 | 09/05/2003 | 13,147,439.00 | 74,920,845.00 |
| 62734 | 5100086465 | pl06 milestone 15 | 09/25/2003 | 10/21/2003 | 8,893,956.00 | 83,814,511.00 |
| 62975 | 5100088572 | pl06 10/27/03 Milestone #16 | 10/27/2003 | 11/24/2003 | 2,799,215.00 | 86,613,726.00 |
| 63195 | 5100090247 | pl06 ccr platformer project | 11/25/2003 | 12/18/2003 | 2,560,852.00 | 89,174,578.00 |
| 63370 | 5100092046 | pl06 12/29/03 Milestone #18 | 12/29/2003 | 01/16/2004 | 3,984,685.00 | 93,159,263.00 |
| 63538 | 5100094374 | pl06 1/28/04 Milestone # 19 | 01/28/2004 | 02/20/2004 | 2,304,765.00 | 95,464,028.00 |
| 63723 | 5100096382 | pl06 2/25/04 Milestone #20 | 02/25/2004 | 03/19/2004 | 2,237,762.00 | 97,701,790.00 |
| 63936 | 5100098369 | pl06 3/29/04 Milestone # 21 | 03/29/2004 | 04/16/2004 | 2,647,751.00 | 100,349,541.00 |
| 64161 | 5100101009 | pl06 4/26/04 Milestone # 22 | 04/26/2004 | 05/19/2004 | 2,577,717.00 | 102,927,258.00 |
| 64164 | 5100101010 | pl06 4/26/04 Milestone # 23 | 04/26/2004 | 05/19/2004 | 5,718,181.00 | 108,645,439.00 |
| | | | | Final Project Total: | | 108,645,439.00 |

VAL 003529

# EXHIBIT 5

HOWE-BAKER ENGINEERS, LTD.  3102 East Fifth Street, Tyler, Texas 75701, Phone: 903/597-0311 Fax: 903/595-7759

# INVOICE

Invoice Number    62975
Invoice Date      10-27-03
Page      1    Of    3

**CBI** Howe-Baker
Process & Technology

TO:    VALERO REFINING COMPANY – NEW JERSEY
       800 BILLINGSPORT ROAD
       PAULSBORO, NJ 08066-1036

       ATTN: MR. PAT DOUGHERTY
             PROJECT MANAGER

WIRE FUNDS TO:  ***NEW***
BANK OF AMERICA, N.A.
DALLAS, TX
ABA NO. 111000012
HOWE-BAKER ENGINEERS, LTD.
ACCOUNT NO. 003752192593

| Tax ID Number | 75-2912742 | | | |
|---|---|---|---|---|
| Customer Order No | 4500264499 | | | |
| Terms | NET 30 DAYS BY BANK WIRE TRANSFER | | | |
| Date Shipped | | | Via | |
| Shipping Terms | | | H-B Ref | J-1901 |

| Item | Qty | Description | Unit Price | Amount |
|---|---|---|---|---|
| | | UOP CCR PLATFORMER PROJECT, PAULSBORO, NJ | | |
| | | ORIGINAL CONTRACT AMOUNT $110,145,980.00 | | |
| | | APPROVED CHANGE ORDERS  3,669,640.00 | | |
| | | CURRENT CONTRACT VALUE $113,815,620.00 | | |
| | | | | |
| | | MILESTONE INVOICE #16            %       AMOUNT | | |
| | | | | |
| | | **ENGINEERING** | | |
| | | NONE                          0.000000%   $      0.00 | | |
| | | CURRENT EARNED MILESTONE      0.000000%   $      0.00 | | |
| | | | | |
| | | PREVIOUSLY EARNED             15.925176%  $18,029,991.00 | | |
| | | CUMULATIVE EARNED TO DATE     15.925176%  $18,125,338.00 | | |
| | | LESS PREVIOUS INVOICE AMOUNTS             $18,029,991.00 | | |
| | | CURRENT GROSS INVOICE AMOUNT              $     95,347.00 | | |
| | | LESS 10% RETENTION                        $     (9,535.00) | | |
| | | NET ENGINEERING AMOUNT DUE                $     85,812.00 | | $85,812.00 |
| | | | | |
| | | **PROCUREMENT** | | |
| | | COMPLETE FABRICATION HEATER | | |
| | | RADIANT SECTION              1.000000%   $ 1,138,156.00 | | |
| | | CURRENT EARNED MILESTONE     1.000000%   $ 1,138,156.00 | | |
| | | | | |
| | | **CONTINUED ON PAGE 2** | | |

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

ALL WORK DNE BY THIS COMPANY IN PRODUCING THE MERCHANDISE LISTED IN THIS INVOICE AND THE PRICES CHARGED ARE IN
ACCORDANCE WITH GOVERNMENT REGULATIONS.  SELLER ALSO REPRESENTS THAT THE GOODS OR SERVICES COVERED BY THIS
INVOICE HAVE BEEN PRODUCED OR RENDERED IN ACCORDANCE WITH THE PROVISIONS OF THE FAIR LABOR STANDARDS ACT OF
1938, AS AMENDED.

ANALYSIS COPY

HB 010127    39
CF

HOWE-BAKER ENGINEERS, LTD. 3102 East Fifth Street, Tyler, Texas 75701, Phone: 903/597-0311 Fax: 903/595-7759

# I N V O I C E


Howe-Baker
Process & Technology

Invoice Number:   62975
To:   VALERO REFINING CO. – N J
H-B Ref:   J-1901
Page:   2   of   3

| Item | Qty | Description | | | Unit Price | Amount |
|------|-----|-------------|---|---|------------|--------|
| | | PREVIOUSLY EARNED | 35.605201% | $40,311,105.00 | | |
| | | CUMULATIVE EARNED TO DATE | 36.605201% | $41,662,436.00 | | |
| | | LESS PREVIOUS INVOICE AMOUNTS | | $40,311,105.00 | | |
| | | CURRENT GROSS INVOICE AMOUNT | | $ 1,351,331.00 | | |
| | | LESS 10% RETENTION | | $ (135,133.00) | | |
| | | NET PROCUREMENT AMOUNT DUE | | $ 1,216,198.00 | | $1,216,198.00 |
| | | | | | | |
| | | FABRICATION | | | | |
| | | NONE | 0.000000% | 0.00 | | |
| | | | 0.000000% | 0.00 | | |
| | | PREVIOUSLY EARNED | 10.438889% | $11,818,587.00 | | |
| | | CUMULATIVE EARNED TO DATE | 10.438889% | $11,881,086.00 | | |
| | | LESS PREVIOUS INVOICE AMOUNTS | | $11,818,587.00 | | |
| | | CURRENT GROSS INVOICE AMOUNT | | $ 62,499.00 | | |
| | | LESS 10% RETENTION | | $ (6,250.00) | | |
| | | NET FABRICATION AMOUNT DUE | | $ 56,249.00 | | $56,249.00 |
| | | CONSTRUCTION | | | | |
| | | SET STRIPPER OVHD RECEIVER | 1.300000% | $ 1,479,603.00 | | |
| | | CURRENT EARNED MILESTONE | 1.300000% | $ 1,479,603.00 | | |
| | | PREVIOUSLY EARNED | 20.286332% | $22,967,556.00 | | |
| | | CUMULATIVE EARNED TO DATE | 21.586332% | $24,568,618.00 | | |
| | | LESS PREVIOUS INVOICE AMOUNTS | | $22,967,556.00 | | |
| | | CURRENT GROSS INVOICE AMOUNT | | $ 1,601,062.00 | | |
| | | LESS 10% RETENTION | | $ (160,106.00) | | |
| | | NET CONSTRUCTION AMOUNT DUE | | $ 1,440,956.00 | | 1,440,956.00 |
| | | TOTAL AMOUNT DUE THIS INVOICE | | | | $2,799,215.00 |
| | | SUMMARY | | | | |
| | | CUMULATIVE EARNED TO DATE | 84.555598% | $96,237,478.00 | | |
| | | PREVIOUSLY INVOICED | 82.255598% | $93,127,239.00 | | |
| | | GROSS AMOUNT CURRENT INVOICE | 2.3000000% | $ 3,110,239.00 | | |
| | | RETENTION CURRENT INVOICE | | $ 311,024.00 | | |
| | | NET AMOUNT CURRENT INVOICE | | $ 2,799,215.00 | | |
| | | RETENTION WITHHELD PREVIOUS INVOICES | | $ 9,312,728.00 | | |
| | | RETENTION WITHHELD CURRENT INVOICE | | $ 311,024.00 | | |
| | | RETENTION WITHHELD TO DATE | | $ 9,623,752.00 | | |

CONTINUED ON PAGE 3

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

ANALYSIS COPY

HB 010128

40

HOWE-BAKER ENGINEERS, LTD. 3102 East Fifth Street, Texas 75701, Phone: 903/597-0311 Fax: 903/595-7759

# INVOICE

CBI Howe-Baker Process & Technology

Invoice Number: 62975
To: VALERO REFINING CO. – N J
H-B Ref: J-1901
Page: 3 Of 3

| Item | Qty | Description | Unit Price | Amount |
|---|---|---|---|---|
| | | NET AMOUNT PREVIOUSLY INVOICED $83,814,511.00 | | |
| | | NET AMOUNT CURRENT INVOICE $ 2,799,215.00 | | |
| | | NET AMOUNT INVOICED TO DATE $86,613,726.00 | | |

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

ANALYSIS COPY